MINNIE APFELBAUM AND ALICE LAWSON, ADMINISTRA-TRICES OF THE ESTATE OF JOHN P. JOHNSON, PLAIN-TIFFS-APPELLEES, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, A CORPORATION, DEFEND-ANT-APPELLANT.

Submitted May term, 1933—Decided December 19, 1933.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and HEHER.

For the plaintiffs-appellees, *Jacob Mellinger* (*Ralph Giordano,* of counsel).

For the defendant-appellant, *Perkins, Drewen & Nugent.*

PER CURIAM.

This is an appeal from a judgment recovered in the Essex County Circuit Court by the plaintiffs below against the de-

fendant, The Prudential Insurance Company of America, a corporation. The following are the material facts: The appellant, insurance company, insured the life of John P. Johnson, on two policies of insurance totaling $715. Each policy contained a provision that the insurer, upon receipt of due proof of the death of the insured, during the continuance of the policy, would pay the amount of the insurance to the executors or administrators of the insured.

On November 24th, 1931, it was ordered, adjudged and decreed by the surrogate of Hudson county that the said Johnson is presumed to be dead (he having been absent from the state and not heard from for over seven years successively), and thereafter the said surrogate granted letters of administration to the plaintiffs, who are the daughters of the said Johnson. It appears that the defendant company was made party to this proceeding, having for its object the declaring of the said John P. Johnson to be dead, and appeared before the surrogate by counsel and also had received notice that the letters of administration had been granted. It further appears that the said defendant, on its application, obtained from the surrogate, on June 8th, 1932, an order to show cause why the said decree adjudging the said Johnson to be presumably dead should not be opened and set aside and declared void; and it further appears that on September 21st, 1932, the said order to show cause why the original decree should be revoked, was discharged, and it was ordered that the decree of November 24th, 1931, "stand in full force and effect" for the reason that no testimony was produced by the insurance company to cause the surrogate to revoke his said original decree.

The plaintiffs demanded payment of the amount of the insurance specified in the policies, which was refused by the insurance company, and suit was brought by the plaintiffs and judgment recovered as aforesaid.

In their case the plaintiffs proved that these proceedings were held before the surrogate and that the defendant had notice thereof and appeared in said proceedings; that the surrogate allowed the decree as aforesaid and also letters of administration. Some testimony was submitted by the de-

fendant none of which rebutted the presumption of the death of Johnson. The court submitted the case to the jury and the plaintiffs were awarded judgment for the amount of the policies.

The appellant writes down nine grounds for reversal, some of which are not argued and must be treated by us as being abandoned.

The first point presented in the appellant's brief recites that no judgment can be sustained on the issues raised by the complaint. This point is not included in the grounds of appeal filed by the defendant and, consequently, is not now available to it.

The second and third points may be considered together and are that it was incumbent upon the plaintiffs to prove the death of Johnson as a condition precedent to recovery and that no proof of death was ever filed with the company, in accordance with the requirement of the policies. It is, however, clear from the state of the case that the defendant, insurance company, appeared before the surrogate on the proceedings initiated by plaintiffs to have Johnson declared legally dead; that notice of the granting of letters of administration was had and that the insurance company notified the plaintiffs that it would not pay the policies; and that from the defendant's own exhibit, it is clear that the defendant knew of the situation under consideration because on the margin of the application for these insurance policies, which remained in the possession of the defendant, there is stamped the word "disappearance." Such proofs of presumption of death as existed were obviously brought to the attention of the company and when the insurance company notified the plaintiff that it would not pay the amount of the insurance specified in the policies, this action, on its part, relieved the plaintiffs of the further requirements called for by the policies. *Cheshansky* v. *Merchants Fire Insurance Co.*, 102 *N. J. L.* 414; 131 *Atl. Rep.* 910; *Radwanski* v. *Scottish Union, &c., Co.*, 100 *N. J. L.* 192; 126 *Atl. Rep.* 657; *Evans* v. *Farmers Reliance Insurance Co.*, 110 *N. J. L.* 159; 164 *Atl. Rep.* 258.

It is also clear that any and all contracts, such as this was, are subject to the law of the sovereignty and our statute pro-

vides as follows (*Cf.* Death, 2 *Comp. Stat., p.* 1904—Rev. 1877, page 294—as amended *Pamph. L.* 1895, *p.* 751) :

"That any person, whether a resident of this state or not who shall remain beyond the sea, or absent himself or herself from this state, or from the place of his or her last known residence, or conceal himself or herself in this state or in the place of his or her last known residence, for seven years successively, shall be presumed to be dead, in any case wherein his or her death shall come in question, unless proof be made that he or she were alive within that time;  *  *  *."

It is not argued that the proceedings before the surrogate were irregular or that the jurisdictional facts and statutory requirements were not proven to the satisfaction of that official so that he was impelled to decree the presumptive death of Johnson. Furthermore, the defendant submitted no proof to offset this presumption of death and we are of the opinion that since the decree of the surrogate was not challenged by any legal proof, the case was properly one for the determination of the jury.

It is next urged, under the appellant's fourth point, that it was error to admit in evidence in this case the letters of administration which were granted by the surrogate. We do not think so. These letters were corroborative of the adjudication of presumptive death of Johnson since the surrogate must adjudicate the fact of the death of the person in question as a preliminary to the granting of letters of administration. "An order directing the issue of such letters therefore contained by necessary implication (when not expressly stated) an adjudication of the fact of the death of the alleged decedent." *Moyna* v. *Prudential Life Insurance Co.,* 96 *N. J. Eq.* 293 (at *p.* 296) ; 125 *Atl. Rep.* 99.

Under the fifth point made by the appellant, it is contended that it was error for the trial court to admit into evidence an order to show cause made by the surrogate having for its purpose the revocation of the decree of Johnson's death. Now this petition, upon which the order to show cause was granted, was the defendant's petition and tended to show that after the decree of death, so called, the defendant below made an attack upon these proceedings and that the surrogate, act-

ing in a judicial capacity, received the petition and allowed the order to show cause why his decree should not be revoked. Obviously, no proof was presented on the return of the show cause order that challenged the surrogate's previous determination since that official reaffirmed it. Certainly this admission of this evidence was not error. After all, this evidence was official in character and had to do with the step in the cause preliminary to the instant suit. The objection was that the evidence was immaterial. We think that it was material.

The final point made by the appellant is that the court erroneously excluded evidence by an actuary of Johnson's life expectancy. Evidence is admissible when it is relevant, material or competent. The mortality tables were offered to show that Johnson had a certain expectancy of life which had not yet expired. We do not see how these tables can be said to be material, relevant or competent testimony to show that Johnson was still alive. After all, the real issue is whether Johnson were alive or not and in the absence of legal proof that he was alive, the legal presumption set up by the statute governs.

A young man of twenty-one, in sound health, has a long expectancy of life, yet he may die the following day from disease or accident. These mortality tables are solely for the purpose of helping a jury to determine the length of years that a person would live providing he is not taken off by accident or disease, and it is for the purpose of enabling such fact finding body to form some estimate of how long a person in good health, who is not taken off in an untimely way, might be expected to live.

We find no substance in the points argued for reversal and the judgment is affirmed, with costs.