GASPARE RAGUSA, FRANK RAGUSA AND MARIE RAGUSA, PLAINTIFFS–APPELLANTS, v. DR. CHI YEUNG LAU, DEFENDANT–RESPONDENT, AND JERSEY SHORE MEDICAL CENTER, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued February 7, 1989—Decided May 9, 1989.

Before Judges DREIER and BROCHIN.

*Michael S. Feldman* argued the cause for appellants (*Ozzard, Wharton, Rizzolo, Klein, Maruo, Savo & Hogan*, attorneys; *Michael S. Feldman* and *Arthur D. Fialk*, on the brief).

*Denise W. McIntyre* argued the cause for respondent (*Johnstone, Skok, Loughlin & Lane*, attorneys; *I. Blakeley Johnstone, III*, of counsel, *Denise W. McIntyre* and *Michael J. Schoppmann*, on the brief).

The opinion of the court was delivered by

DREIER, J.A.D.

Plaintiff appeals from an adverse jury verdict rendered in this medical malpractice action. Plaintiff struck his head when diving into shallow water at an ocean beach. He was immediately taken to the Jersey Shore Medical Center, and defendant, Dr. Lau, treated plaintiff at the emergency room. After reviewing plaintiff's x-rays, Dr. Lau failed to diagnose a fractured vertebra. However, the doctor did prescribe a soft cervical collar. Hours later plaintiff became light-headed; he felt numbness in his arms and legs and severe overall pain and discomfort. He was transported to another hospital where new x-rays were taken, but they also were read as negative. However, a CAT scan taken the next day revealed that plaintiff had suffered a stroke, and that one of his verterbra was fractured.

At trial, plaintiff asserted that the doctor's negligence was the proximate cause of his disabilities. Defendant, however, contended that an arterial injury, present since the accident, caused the problem and his failure to diagnose the fractured vertebra was not a proximate cause of plaintiff's eventual

stroke-related injuries. In fact, he claimed that had the fractured vertebra been noticed, the plaintiff would have received the same treatment that he was given after the CAT scan revealed the fracture.

▇▇▇ The problem in the case and the sole issue on appeal is a narrow one. It arises from the polling of the jury when the verdict was taken on the proximate cause issue. The verdict was reported to be unanimous on the issue of negligence, but five to one on proximate cause.

When the verdict was returned, the acting foreman of the jury misread the verdict sheet and initially reported that the jurors had unanimously voted on question 1(a) that there was no negligence on the part of Dr. Lau. Another juror stated "that is an error look at that sheet, please." The acting foreman then apologized for reading it wrong and stated that the jury had unanimously determined that Dr. Lau was negligent. The judge then addressed question 1(b), and the acting foreman reported that the jurors had determined by a five to one vote that Dr. Lau's negligence was not a proximate cause of plaintiff's stroke. The following then transpired:

THE COURT: All right. Now, members of the jury, on question 1(b) since your vote was not unanimous I have to do what we call polling, poll you and what that means is I have to make certain that there's no misunderstanding between you and Mr. Hughes and me, so I'm going to read the question again and tell you how I understand you voted on that question. Then, I am going to ask each one of you individually if I have correctly stated the jury verdict, and if I have, you say yes. If I've somehow misstated it or misunderstood it, you say no, okay?

The question is this: If so, that is, if there was negligence on the part of Doctor Lau, was that negligence a proximate cause of Mr. Ragusa's stroke?

As I understand what your foreman announced you voted no by a five to one vote.

Mr. Ebert, did I correctly state the jury verdict?

MR. EBERT: Right.

\* \* \*

[Each of the other five jurors then also responded "yes" to the judge's question].

Immediately following this taking of the verdict and prior to the discharge of the jury, plaintiff's attorney requested the following of the court:

> I would like the jury polled individually as to they, themselves, if they individually agree with that verdict or not.
>
> THE COURT: O.k. That request is denied.

Plaintiff then reiterated at a motion for a new trial, and now urges before us, that the only proper polling of a jury is to have each juror, in court and in public, state his or her individual verdict, not his or her agreement that the vote as reported accurately stated what the jurors had decided in the jury room. He notes, and the trial judge agreed, that one juror was crying when the verdict was taken. He posits that if this juror was not the one hold-out, she may have been on the fence and ready to swing in favor of his client. She was never asked to declare her verdict, but only whether the foreman correctly stated that the vote had been five to one.

There is no question that the judge intended that the jurors not state their individual verdicts. He could not have been clearer in his explanation when he denied plaintiff's motion for a new trial. He stated:

> The argument is that that was an incorrect manner to poll the jury. That what I should have done was ask each juror how he or she voted on that question. Juror number one, do you vote or did you vote yes or no on that question? Juror number 2 and so on. And that's really as I see it the sole question before me and I think the question is whether a party has a right, a party meaning Mr. Ragusa or Doctor Lau to know how each juror voted. Does a party have a right to know which juror voted yes on the question or no on the question? Does a party have right to stare down the jurors as they cast their vote? I recognize that that way of polling the jury is the way it is done by most judges. I also believe there is no law in the State of New Jersey that tells me that is the required way to do it and I believe that is not an appropriate way to do it.

The judge then noted that he understood plaintiff's attorney's objection at the time, but had not sustained it after weighing the advantages and disadvantages of plaintiff's requested method of polling the jury. He then discussed the authority cited by counsel and reiterated his opinion that the polling of a jury as requested by plaintiff was, in effect, invading the

sanctity of the jury room.  His method, he explained, best comported with New Jersey's policy of freeing the jury from any type of outside pressure.  He felt that to have to state the verdict in the presence of the parties could sometimes rise to the level of intimidation.  He specifically rejected plaintiff's argument that the statement of individual verdicts would eliminate the possibility that the jurors voted in the jury room under pressure from other jurors.  He further specifically rejected the suggestion that having the jurors state their verdicts in the courtroom gave jurors the opportunity to change their mind after they entered the courtroom.  The judge felt that any juror could volunteer that his or her mind had been changed, and the jury then could be sent back to resume its deliberation.

*Rule* 1:8–10 states:

If a verdict is returned and before it is recorded, the jury shall be polled at the request of any party or upon the court's motion, and it shall be polled in every civil action if the verdict is not unanimous. *If the poll discloses that there is not* unanimous concurrence in a criminal action or *concurrence by five-sixths in a civil action,* the jury may be directed to retire for further deliberations or discharged. [Emphasis added].

In *State v. Smith,* 27 *N.J.* 433, 455–456 (1958), and *State v. Butler,* 27 *N.J.* 560, 608–609 (1958), the Supreme Court definitively stated how a jury should be polled.  In *Smith,* each juror was asked whether the verdict was in fact his or her verdict as a juror.  The Court noted prior precedent and stated that each juror is to indicate that the stated verdict was his or her verdict, or that he or she agrees with the verdict recorded, as "it was the duty of each juror to indicate clearly whether he found the prisoner guilty." 27 *N.J.* at 456.  In *State v. Butler,* the Court referred to the procedure of polling discussed in *State v. Smith,* and reiterated that "[a]fter the foreman has announced the verdict as the determination of the jury, the basic purpose is to ascertain the fact of individual *concurrence.*" [Emphasis by the Court]. 27 *N.J.* at 609.

This concurrence, also required by *R.* 1:8–10, cannot be determined by having the jurors state that the vote announced by the foreperson was the vote that had been taken in the jury

room. Such a polling lacks the individual statement of each juror's verdict. The question addressed to each juror must unambiguously elicit the juror's individual, certain and specific position. *Cf. State v. Ward*, 57 *N.J.* 75, 78–79 (1970). While we appreciate the contrary view of the trial judge, the Supreme Court direction expressed both in case law and court rule does not permit the procedure he employed.

Was this deviation from procedure, coupled with a timely objection, harmless error? Under *R.* 2:10–2 we may only determine that a departure from the rules after the taking of a timely objection was harmless error if it was not clearly capable of producing an unjust result. In this case, plaintiff's right to a polling of the jury was prejudiced. The jurors were never individually asked when they reached the courtroom whether they agreed or disagreed with the verdict, *i.e.,* what their individual verdicts were concerning the issue of proximate cause. To denominate this error as harmless would change the mandate of the rule into a mere suggestion. We cannot reconstruct the situation as it existed when the judge mistakenly asked the wrong questions of the jurors.[1] We, therefore will

---

[1] Although the trial judge's determination must be reversed, the question of remedy has been considered in some detail. The judiciary is not unmindful of the fact that litigation, and especially medical malpractice cases such as the one before us, is expensive and time-consuming for both plaintiffs and defendants. The courts and Bar are constantly attempting to find alternatives to litigation and methods by which litigation costs can be reduced, without doing violence to the principles of justice. We have alternatively considered recalling the jurors to determine what they would have said if properly polled. But, while there are no New Jersey precedents, other courts have determined that reconstituting a jury to question their intent when reaching a verdict is improper. *Kreiser v. Colorado*, 199 *Colo.* 20, 604 *P.2d* 27, 28 (1979) (Recalling jury members after dismissal, some of whom were already home when they were recalled, is improper, even to clarify their intent because the verdict form lacked the word "serious" in the charge of "bodily injury."); *Boyer v. Maloney*, 27 *Ohio App.* 52, 160 *N.E.* 740, 741 (1927) (Where jury's verdict was read in open court but they were not polled before being discharged, they could not be reassembled to be polled.) *See generally* 66 *A.L.R.* 536, 556, 560, 570, 573 (1930) collecting early authorities *pro* and *con.* *Cf. R.* 1:16–1, requiring a

direct a new trial. Although the parties have no quarrel with the trial of the case in which all facts were presented to an impartial jury, we must reverse and remand the matter to the Law Division since we find that the verdict on this issue was never legally stated.

We recognize that there may be other cases in which the polling procedure employed here may have been followed. We have no wish to affect otherwise valid judgments where this issue has not been raised on appeal. We therefore direct that this decision shall benefit the plaintiffs who have here raised the issue or other parties who may heretofore have preserved the issue for appellate review. Otherwise, this decision shall be given prospective effect only. *Cf. Willis v. Dept. of Cons. & Ec. Dev.*, 55 *N.J.* 534, 541 (1970).

The final issue to be determined is whether the new trial should encompass the issue of negligence as well as proximate cause, in view of the jury's unanimous verdict on the issue of negligence. The negligence issue was by no means open and shut. While Dr. Lau failed to diagnose the fractured vertebra, we have not been given a complete record from which we can determine how close the issue of negligence may have been. We do have the representation of defendant that even the second x-ray, taken the day after the accident, failed to reveal the fracture, and that it was only the subsequent CAT scan which made the fracture evident. The issues of negligence and proximate cause are often intertwined. Although we do not wish to add to the parties' expense by their having to prove and

---

showing of good cause for an order to permit examination of jurors after trial. All of the New Jersey cases on this subject deal with investigation of juror improprieties or taint. *Pressler, Current N.J. Court Rules,* Comment 1 to *R.* 1:16–1 (1989); and see *Fitzell v. Rama Industries, Inc.,* 416 *So.*2d 1246, 1248 (Fla.Dist.Ct.App.1982) (After the jury has separated, it cannot be recalled to alter or amend the verdict or even to recollect its deliberations because its members "lose their separate identity as a jury and are subject to extra trial influences.").

defend against the negligence claim, the safer course in this case is to have the entire matter re-presented at a new trial.

The order denying plaintiff's motion for a new trial is reversed, and the matter is remanded for a new trial on all issues.