GASPARE RAGUSA, FRANK RAGUSA, AND MARIE RAGUSA, HIS
WIFE, PLAINTIFFS-RESPONDENTS, v. DR. CHI YEUNG LAU,
DEFENDANT-APPELLANT, AND JERSEY SHORE MEDICAL
CENTER, DEFENDANT.

Argued February 26, 1990—Decided June 13, 1990.

*I. Blakeley Johnstone, III*, argued the cause for appellant (*Johnstone, Skok, Loughlin & Lane*, attorneys, *Michael J. Schoppmann*, on the brief).

*Michael S. Feldman* argued the cause for respondents (*Ozzard, Wharton, Rizzolo, Klein, Mauro, Savo & Hogan*, attorneys, *Michael S. Feldman* and *Arthur D. Fialk*, on the brief).

The opinion of the Court was delivered by

CLIFFORD, J.

This appeal explores the appropriate method for polling a jury in a civil case. Plaintiff Gaspare Ragusa and his parents sued Dr. Lau and other defendants not involved in this appeal, alleging medical malpractice. "Plaintiff" hereafter refers to Gaspare; "defendant" refers to Dr. Lau.

I

Plaintiff claims that Dr. Lau misdiagnosed a neck injury that plaintiff had suffered in a diving accident. At trial the court required a special verdict on the issues of negligence and proximate cause. Misreading the verdict, the foreman initially reported that the jury had found defendant not negligent. After another juror declared that that was an error, the foreman apologetically informed the court that the jurors agreed

unanimously that defendant had been negligent, but voted five to one that that negligence had not proximately caused plaintiff's injuries.

Pursuant to *Rule* 1:8–10, the court polled the jury on the proximate-cause issue. Explaining the procedure to the jury, the court stated that because the vote was not unanimous on the proximate-cause issue,

I have to do what we call polling, poll you and what that means is I have to make certain that there's no misunderstanding between you and [the foreman] and me, so I'm going to read the question again and tell you how I understand you voted on that question. *Then, I am going to ask each one of you individually if I have correctly stated the jury verdict, and if I have you say "yes." If I've somehow misstated or misunderstood it, you say no, okay?* (Emphasis added.)

Remarking that he understood the foreman to announce that the jury voted "no" on the proximate-cause issue "by a five to one vote," the judge proceeded to ask each juror if he had "correctly state[d] the jury verdict." Each responded affirmatively. At the close of the court's inquiry, plaintiff requested that "the jury [be] polled individually as to they, themselves, if they individually agree[d], with that verdict or not." The court denied that request as well as plaintiff's subsequent motion for a new trial.

The court's discussion on plaintiff's motion for a new trial indicates that it understood his contention on the polling point. It summarized plaintiff's argument: "what I should have done was ask each juror how he or she voted on that question. Juror number one, do you vote or did you vote yes or no on that question?" Although the judge acknowledged "that that way of polling the jury is the way it is done by most judges," he also believed that that was "not an appropriate way to do it."

The court suggested that such a procedure would unjustifiably give a party the "right to stare down the jurors as they cast their vote," and would contravene this State's policy concerning "the sanctity of the jury room." The court was not convinced that the benefits of eliminating the possibility that a vote was the product of peer pressure gained by requiring

jurors to declare their votes outweighed the harm from such a procedure. Nor was the court persuaded that such a procedure was appropriate simply because one juror had cried when the verdict was announced. Rather, the polling procedure must protect

> the privacy and the safety and the freedom [of] our jurors in the jury room. If we want [the jury] to believe that [it] can go into that jury room and try to put emotion, try to put sympathy, try to put bias out of [its] mind[ ] and make an effort to decide the case free of those feelings, decide the case correctly from an intellectual standpoint and not be called to account for that in any way at all.

On appeal plaintiff argued that the only proper method for polling a jury "is to have each juror, in court and in public, state his or her individual verdict, not his or her agreement that the vote as reported accurately stated what the jurors had decided in the jury room." 233 *N.J.Super.* 84, 87, 558 *A.*2d 38 (App.Div. 1989). Relying on *Rule* 1:8–10 and criminal cases involving the polling issue, the court below concluded that a poll should elicit each juror's position on the matter. The Appellate Division found the trial court's departure from that procedure to be reversible error.

We granted defendant's petition for certification. 117 *N.J.* 63, 563 *A.*2d 828 (1989).

## II

### A

*Rule* 1:8–10 requires that the jury be polled "in every civil action if the verdict is not unanimous." A poll ensures that each juror express concurrence or disagreement with the verdict, allows jurors to dissent from the announced verdict, and protects against coercive deliberations. *Weir v. Luz,* 137 *N.J.L.* 361, 362, 58 *A.*2d 550 (Sup.Ct.1948); *Silak v. Hudson & Manhattan R.R. Co.,* 114 *N.J.L.* 428, 430–31, 176 *A.* 674 (Sup.Ct. 1935). A poll safeguards the parties' interests by mandating that the jurors declare their concurrence or disagreement with the verdict in open court, and the jurors' interests by providing the opportunity to correct peer-pressured verdicts.

The need for a poll here is undisputed; the verdict was not unanimous. The controversy concerns instead the appropriate manner in which a jury should be polled. Although *Rule* 1:8–10 does not explicitly provide for a method of polling a jury, we have had occasion to discuss the mechanics of polling.

The basic purpose of a poll is to "ascertain the fact of *individual* concurrence." *State v. Butler*, 27 *N.J.* 560, 609, 143 *A.*2d 530 (1958) (emphasis added and deleted). We have approved of a poll that requires that "[a]s each juror's name is polled, if such juror agrees with the verdict recorded, will you kindly respond 'I do.' If you do not agree with the verdict as it is recorded, then kindly respond that you do not agree." *State v. Smith*, 27 *N.J.* 433, 456, 142 *A.*2d 890 (1958) (quoting *State v. Huff*, 14 *N.J.* 240, 255, 102 *A.*2d 8 (1954)); *cf. Ferry v. Checker Taxi Co.*, 165 *Ill.App.*3d 744, 753, 117 *Ill.Dec.* 382, 388, 520 *N.E.*2d 733, 739 (1987) (poll that asked, "Was it your verdict in the jury room and is it your verdict now?" held valid), *appeal denied*, 119 *Ill.*2d 556, 119 *Ill.Dec.* 384, 522 *N.E.*2d 1243 (1988); *Acosta v. Pendleton Memorial Methodist Hosp.*, 545 *So.*2d 1053, 1059 (La.App.) (correct procedure for polling jury is for judge or clerk to call each juror and ask "Is this your verdict?"), *writ denied*, 551 *So.*2d 637, 638 (La.1989); *O'Brien v. Mix*, 14 *A.D.*2d 832, 220 *N.Y.S.*2d 652 (1961) (poll should ask each juror individually whether verdict announced is his or her verdict, not whether jury voted 11–1 in favor of $750 award for plaintiff); *Highfield v. Liberty Christian Academy*, 34 *Ohio App.*3d 311, 313, 518 *N.E.*2d 592, 596 (1987) (jury must be polled by asking each juror if verdict is the juror's). A poll inquires into the findings or verdict of each juror. *State v. Cleveland*, 6 *N.J.* 316, 322, 78 *A.*2d 560 (1951); *see also State v. Schmelz*, 17 *N.J.* 227, 232, 111 *A.*2d 50 (1955) (polling should compel "each juror to answer 'yes' or 'no' as to whether his or her verdict was that announced by the foreman"). A poll "requires each juror to answer for himself, thus creating individual responsibility, eliminating any uncertainty as to the verdict as announced * * *." *State v. Cleveland, supra*, 6 *N.J.* at 322, 78 *A.*2d 560.

■ Defendant contends that the trial court's poll complied with the requirement of individual acknowledgement of agreement with the verdict because it "ascertain[ed] the *assent* of each juror to the verdict *as announced."* Defendant misunderstands the nature of the inquiry. A poll questions each juror's agreement with the verdict, not his or her agreement with the court's recitation of the jury's vote. The trial court's poll did not confirm that each juror agreed with the verdict as announced. Rather, the poll established only that the court had accurately recited that the jury had reached a five-to-one decision on the proximate-cause issue. That type of inquiry does not further the purpose of a poll. It does not ensure that each juror express concurrence or disagreement. Nor does it reveal coercive deliberations. At best that type of inquiry confirms only that the jury, not each juror, reached a particular verdict.

### B

■ Defendant next argues that the protection of jurors' privacy justifies a poll that establishes only that a juror agrees that the announced verdict was that of the jury. We recognize the importance of preserving the confidentiality of deliberations. Juries deliberate in secrecy to foster robust, thought-provoking, uninhibited debate. *State v. LaFera,* 42 *N.J.* 97, 106, 199 *A.*2d 630 (1964). Such debate " 'might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world.' " *Ibid.* (quoting *Clark v. United States,* 289 *U.S.* 1, 13, 53 *S.Ct.* 465, 469, 77 *L.Ed.* 993, 999 (1933)). To encourage free debate and to protect the jury, courts curtail the interrogation of jurors. *See Acosta v. Pendleton Memorial Methodist Hosp., supra,* 545 *So.*2d at 1059 (poll asking jurors for basis of determination, rather than simply for determination itself, inappropriately invades internal deliberations of jury); *Sandford v. Chevrolet Div.,* 52 *Or.App.* 579, 585, 629 *P.*2d 407, 411 (1981) (poll should not delve into deliberative process, but simply confirm agreement on all issues determined by verdict), *aff'd,*

292 *Or.* 590, 642 *P.*2d 624 (1982); *Lovell v. McCullough,* 222 *Tenn.* 567, 439 *S.W.*2d 105 (1969) (each juror should be asked only whether verdict is his or her verdict, not about methods for reaching verdict).

A poll that requests that jurors voice their personal concurrence with the verdict does not contravene that policy. Surely a question that asks, "Is this your verdict?" does not require that jurors disclose "communications during deliberations." To answer that question, jurors need not reveal their reasons for the decision, their deductions, their conversations. A simple "yes" or "no" will suffice. Such a poll is not overly intrusive of a juror's privacy.

## C

Finally, defendant urges us to draw a distinction between criminal and civil cases for purposes of polling. According to defendant, a poll that requires that jurors voice their verdicts is necessary only in criminal cases. Defendant emphasizes that civil trials differ from criminal trials in many respects: juries can be comprised of fewer than twelve jurors, a lesser burden of proof governs, a non-unanimous verdict suffices for judgment, and freedom is rarely at risk.

Although criminal trials are pregnant with procedural precautions that do not apply in the civil context, other procedural precautions apply in both criminal and civil cases. Polling is available in both types of cases at the request of any party or on the court's own motion. *R.* 1:8–10. It is mandatory in civil cases resulting in a non-unanimous verdict. *Ibid.* Defendant does not cite to any authority that distinguishes between the method of polling in criminal and civil cases.

Those courts that have dealt with polling in civil cases have endorsed the method used in criminal cases. *See, e.g., Acosta v. Pendleton Memorial Methodist Hosp., supra,* 545 *So.*2d at 1059 (poll asks each juror "Is this your verdict?"); *White v. Seaboard Coast Line R.R. Co.,* 139 *Ga.App.* 833, 835–36, 229

*S.E.*2d 775, 777–78 (1976) (poll must ascertain whether a juror agrees or disagrees with verdict); *Ferry v. Checker Taxi Co., supra,* 165 *Ill.App.*3d at 753, 117 *Ill.Dec.* at 388, 520 *N.E.*2d at 739 (poll asks each juror whether verdict is his or her verdict); *O'Brien v. Mix, supra,* 14 *A.D.*2d at 832, 220 *N.Y.S.*2d at 652 (same); *Highfield v. Liberty Christian Academy, supra,* 34 *Ohio App.*3d at 313, 518 *N.E.*2d at 596 (same). The purpose of a poll is the same in both situations. See *Weir v. Luz, supra,* 137 *N.J.L.* at 362, 58 *A.*2d 550, and *State v. Butler, supra,* 27 *N.J.* at 609, 143 *A.*2d 530. The parties in civil cases, like those in criminal cases, have an interest in determining each juror's position concerning the verdict. If that were not so, the Rule would not provide for a poll in civil cases.

We would give but half a loaf were we to afford civil litigants the right to a poll but deny them the use of a procedure that accomplishes the purpose of the poll. *Cf. Sandford v. Chevrolet Div., supra,* 52 *Or.App.* at 585, 629 *P.*2d at 411 ("[S]tatutory right to have the jury polled includes the right to have the poll conducted in a manner which demonstrates the verdict's validity. Otherwise, the right to a poll, though absolute, would be meaningless."). We hold therefore that in both civil and criminal cases a poll should require that each juror confirm that the verdict is his or her verdict. *See* 76 *Am.Jur.*2d *Trial* § 1122 (1975).

### III

■ Observing that "[t]o denominate this error as harmless would change the mandate of the [R]ule into a mere suggestion," 233 *N.J.Super.* at 89, 558 *A.*2d 38, the Appellate Division concluded that the trial court's use of an inadequate polling procedure amounted to reversible error. We disagree.

The Rules of procedure were "promulgated for the purpose of promoting reasonable uniformity in the expeditious and even administration of justice." *Handelman v. Handelman,* 17 *N.J.* 1, 10, 109 *A.*2d 797 (1954). Such Rules "should not in them-

selves be the source of any extensive litigation; they should be subordinated to their true role, *i.e.*, simply a means to the end of obtaining just and expeditious determinations between the parties on the ultimate merits." *Ibid.* (quoting *Tumarkin v. Friedman*, 17 *N.J.Super.* 20, 85 *A.*2d 304 (App.Div.1951), *certif. denied*, 9 *N.J.* 287, 88 *A.*2d 39 (1952)). Thus, contrary to the Appellate Division's implication, not every misapplication of the Rules of procedure should amount to reversible error. See *Hake v. Manchester Township*, 98 *N.J.* 302, 317, 486 *A.*2d 836 (1985) (violation of *Rule* 1:2–2 did not constitute reversible error); *Handelman v. Handelman*, *supra*, 17 *N.J.* at 5, 10–11, 109 *A.*2d 797 (violation of various Court Rules did not warrant reversal).

Nor does a determination of harmless error render those Rules a "mere suggestion." As with all such determinations, the underlying Rule or right will be vindicated in appropriate cases, namely, cases in which the violation or error is clearly capable of producing an unjust result. *R.* 2:10–2; *Bussell v. DeWalt Prods. Corp.*, 105 *N.J.* 223, 231, 519 *A.*2d 1379 (1987); *State v. Macon*, 57 *N.J.* 325, 337–38, 273 *A.*2d 1 (1971). We are not convinced that the trial court's use of an improper polling procedure had the clear capacity to produce an unjust result.

When the court questioned the foreman about the jury's verdict on the negligence issue, he inaccurately responded that the jury had concluded that defendant had not been negligent. Another juror immediately declared, "That is an error. Look at that sheet, please." The foreman then apologized for his mistake and informed the court that the jury had found defendant negligent. Thus, it appears that the jurors in this case had no qualms about registering a dissent with the court. Moreover, despite the court's inadequate poll and the tearful reaction of one juror, we are confident that those jurors would have dissented on the proximate-cause issue as well, had they believed the verdict was wrong.

■  Because plaintiff has not demonstrated that the poll here had the clear capacity to produce an unjust result, we reverse the judgment of the Appellate Division and reinstate the judgment of the trial court. Henceforth, however, trial courts should poll a jury by asking each juror whether the announced verdict is his or her verdict.

STEIN, J., concurring in part and dissenting in part.

I am fully in accord with the Court's ruling that a jury poll, pursuant to *Rule* 1:8–10, requires each juror to state whether he or she agrees with the verdict. The Court correctly observes that a jury poll "ensures that each juror express concurrence or disagreement with the verdict, allows jurors to dissent from the announced verdict, and protects against coercive deliberations." *Ante* at 279, 575 *A*.2d at 9.

I cannot agree, however, that the trial court's failure to poll the jury correctly is harmless error. Although the Court notes that "not every misapplication of the Rules of procedure should amount to reversible error," *ante* at 284, 575 *A*.2d at 12, my view is that a misapplication of *Rule* 1:8–10 cannot be harmless. As acknowledged, the purpose of polling the jury after a nonunanimous verdict is to "ascertain with certainty that * * * *no juror has been coerced or induced to agree to a verdict to which he has not fully assented."* *United States v. Grosso*, 358 *F*.2d 154, 160 (3d Cir.1966), *rev'd on other grounds*, 390 *U.S.* 62, 88 *S.Ct.* 709, 19 *L.Ed*.2d 906 (1968) (quoting *Miranda v. United States*, 255 *F*.2d 9, 16–17 (1st Cir.1958) ). When the poll is defective, the objective of the Rule has not been fulfilled. We cannot assume that a juror who may have been coerced to concur inside the jury room would be emboldened to speak out and protest in open court. I would hold that the error in polling the jury was reversible *per se. Cf. Virgin Islands v. Hercules*, 875 *F*.2d 414, 419 (3d Cir.1989) (court reversed criminal conviction where trial court failed properly to poll jury, noting that "[w]hile reversal may be a harsh result, nothing short of

reversal suffices to remedy this [*Fed.R.Crim.P.* 31(d) ] violation.").

STEIN, J., concurring in part and dissenting in part.

*For reversal*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.