793 A.2d 139 (2002)
349 N.J. Super. 228
DELAWARE VALLEY WHOLESALE FLORIST, INC., Plaintiff-Respondent,
v.
Jean ADDALIA, Defendant-Appellant. and
JMMA, Inc. and Thomas Addalia, Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted March 4, 2002.
Decided March 21, 2002.
*140 Ralph E. McKay, Toms River, attorney for appellant, (Mr. McKay on the brief).
Albertson Ward, attorneys for respondent, (Thomas H. Ward, of counsel and on the brief).
Before Judges PETRELLA, BILDER and KIMMELMAN.
The opinion of the court was delivered by BILDER, J.A.D. (retired and temporarily assigned on recall).
This is a suit on a guaranty of corporate indebtedness in which the appealing defendant, Jean Addalia, has denied the genuineness of her signature, and her co-defendant former husband, Thomas Addalia, has admitted that it was he who signed her name, although he contends that he did so with her permission.

I.
This matter has its genesis in a guaranty of the obligations of Thomas Addalia's flower business, JMMA, Inc., to plaintiff Delaware Valley Wholesale Florist, Inc, signed by Thomas and purporting to bear the signature of Jean.
Delaware instituted suit against JMMA for goods sold and delivered and against Thomas and Jean on the guaranty. Jean filed an answer in which she denied the genuineness of her signature, alleged forgery, and denied knowledge of the transaction. Delaware then filed an amended complaint in which it added as a defendant the individual who claimed to have witnessed Jean's signature. This new defendant was dismissed on summary judgment.
After Thomas admitted in depositions that he had written Jean's signature on the guaranty, Delaware filed a second amended complaint adding a claim against Thomas for punitive damages based on the forgery of his wife's name on the guaranty. Jean did not answer either amended complaint and denies that the second amended complaint was served upon her.
A notice of July 10, 2000 was sent to the parties advising them that the case had been selected for mandatory, non-binding arbitration, scheduled for September 21, 2000. For reasons which do not appear in the record, the arbitration was adjourned, first to November 16, 2000, and finally to December 12, 2000. On the last adjourned date only the plaintiff appeared and, therefore, pursuant to R. 4:21A-4(f), the answers were stricken and an arbitration award was entered granting plaintiff judgment on each of the counts of its latest amended complaint. Thus, inter alia, an award was made against Jean in the sum of $143,627.53.
Thereafter plaintiff moved to confirm the award and reduce it to judgment. Jean moved to set aside the award and obtain a trial de novo. She appeals from an order denying her motion, confirming the award, and entering a judgment against her.

II.
R. 4:21A-4(f), in pertinent part, provides:

*141 If a party defending against a claim of damages does not appear, that party's pleading shall be stricken, the arbitration shall proceed and the non-appearing party shall be deemed to have waived the right to demand a trial de novo. Relief from any order entered pursuant to this rule shall be granted only on motion showing good cause and on such terms as the court may deem appropriate, including litigation expenses and counsel fees incurred for services directly related to the non-appearance.
There seems to be no dispute that Jean did not sign the guaranty. Her husband acknowledged it in depositions, and in the matrimonial settlement agreement not only acknowledged that Jean did not sign the instrument but further that she "had no knowledge nor did she benefit from any note or other obligation to Delaware Valley Wholesale Florist." There is a claim, however, asserted by plaintiff at oral argument, that Jean authorized her husband to sign her name.
At oral argument Jean's attorney represented to the court that he had understood from conversations with the plaintiff's attorney that no affirmative action would be taken against Jean and was thus lulled into missing the arbitration.
The Court further should understand that when this action was commenced, long discussions were held between myself and Mr. Ward, whose a senior partner of my adversary's firm and certain understandings were reached between counsel. I gave my word to Mr. Ward as to certain things. Mr. Ward gave his word to me as to certain things and without going into that in specific detail, because I think it would be inappropriate at this point in time, I leftleft those understanding for which there was compliance on both parts that there would be no affirmative action taken against Jean Addalia. No stipulation of dismissal. No stipulation of dismissal but no affirmative action against her.
....
[A]t the time the arbitration was, in fact, being conducted and unfortunately I have an extremely heavy trial calendar and I was in trial and it was justthere was just no way, given the distances and all involved in, I wasn't going to be able to make that arbitration and, again, with the knowledge that I had these conversations at that point in time prior with Mr. Ward, I felt thatthat Mrs. Addalia would not be pursued at that point. Perhaps my mistake.
I talked to the gentleman at his work andand again, maybe there was a miscommunication but all I could say is that had I known that they were going to go and seek a judgment against Jean Addalia, I would have made arrangements somehow to have one of the judges in Ocean County take me off that trial calendar to get down to Woodbury to handle that issue or had someone local handle it for me.
The attitude of plaintiff's counsel at argument seems to corroborate the reasonableness of that belief for when the court asked her if an award against Jean would be pursued, she said no, plaintiff would not pursue her to get the damages that were owed. The trial judge, with an opportunity to judge the credibility of Jean's counsel, was apparently impressed because he sought to include this in the order but failed when the senior partner agreed only to forebear pending resolution of the claim against Thomas, an empty gesture in view of Thomas's intervening bankruptcy.
Good cause is difficult of precise delineation. Its application requires the exercise of sound discretion in light of the facts and circumstances of the particular *142 case considered in the context of the purposes of the Court Rule being applied. Here, the judgment arises from the defendant's default in failing to appear at the arbitration. As such it is very much analogous to a default judgment where the rule is that a motion to vacate "should be viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." Davis v. DND/Fidoreo, Inc., 317 N.J.Super. 92, 99, 721 A.2d 312 (App.Div.1998) (quoting Marder v. Realty Constr. Co., 84 N.J.Super. 313, 319, 202 A.2d 175 (App.Div.1964), aff'd, 43 N.J. 508, 205 A.2d 744 (1964)).
Where, as here, a reasonable basis exists for a defendant's request and there is a good faith assertion of a meritorious defense, fundamental fairness requires the granting of the motion. Moreover, we cannot lose sight of the fact that at the same time that plaintiff employed R. 4:21A-4(f) to strike Jean's forgery defense, it employed the same rule to strike Thomas's defense to the fraud countfraud in forging Jean's signature. Based on the non-appearances at the arbitration, it sought judgment on both counts.
Jean seeks no more than her day in court. She has a meritorious defense worthy of judicial determination. To the extent plaintiff has suffered any extra litigation expenses by virtue of Jean's failure to appear at the arbitration, R. 4:21A-4(f) provides for their recoupment.
The judgement and arbitration award against Jean Addalia are vacated and the matter remanded for trial.