875 A.2d 1017 (2005)
378 N.J. Super. 341
Harry F. FARRELL and Doris V. Farrell, individually and as husband and wife, Plaintiffs-Appellants,
v.
TCI OF NORTHERN NEW JERSEY, Tele-Communications, Inc., and James Rivera, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 18, 2005.
Decided June 20, 2005.
*1018 Merrill M. O'Brien argued the cause for appellants (O'Brien Thornton, attorneys; Mr. O'Brien and Terry E. Thornton, on the brief).
William L. Brennan, Shrewsbury, argued the cause for respondents (Callan, Koster, Brady & Brennan, attorneys; Mr. Brennan and Sandra M. Guage, Springfield, on the brief).
Before Judges AXELRAD, HOLSTON, JR. and KING.[1]
The opinion of the court was delivered by
HOLSTON, JR., J.A.D.
Plaintiffs, Harry F. Farrell (Farrell) and Doris V. Farrell, appeal the Law Division's March 8, 2004 order denying their motion to restore their case to the trial calendar.[2] We are convinced that the court mistakenly exercised its discretion in denying the motion. We reverse and remand the case to the trial court.
The complaint and jury demand in this personal injury negligence action was filed on May 14, 1997.[3] Plaintiff claims that he incurred personal injuries on April 22, 1997, proximately caused by defendant, James Rivera (Rivera), who was driving a 1995 GMC Van owned by and with the permission of defendant, TCI of Northern New Jersey Tele-Communications, Inc. (TCI). Plaintiff alleges that he sustained serious personal injuries when, after having been stopped at a red light, he proceeded slowly into an intersection on his motorcycle after the traffic light had turned green for his direction and was hit by TCI's speeding cable truck being driven by Rivera. Plaintiff claims Rivera ignored the red light in his direction.
The parties engaged in extensive discovery of the two plaintiffs, Larry Homsany (Homsany), who was a motorist waiting directly in line at the red light behind plaintiff, the traffic reconstruction experts, economic experts, employability experts and several medical experts. Discovery continued into 2000.
Unknown to any party was the fact that on January 6, 1999, a court-generated order dismissing the complaint and suppressing *1019 defenses was entered by the court, pursuant to Rule 4:21A-4(f), for the parties' failure to appear for mandatory arbitration on that date. However, the court failed to issue any notice of the arbitration and failed to provide notice of the dismissal order to any of the parties.
Thereafter, the court entered three discovery orders, all of which were served on the parties, thereby indicating that the case was still active. The last order was entered on July 8, 1999.
According to the certifications made to the court by plaintiff and plaintiffs' counsel, plaintiff fell and injured his left elbow in February 2000 as a result of the limp that he had developed after six surgical procedures he incurred for injuries to his left foot sustained in the accident. Because plaintiffs' counsel felt there might be medical malpractice in the treatment of plaintiff's elbow, counsel sent plaintiff's medical records to an orthopedist for review, anticipating the need to amend the complaint if medical malpractice were determined by the orthopedic consultant. However, the absence of malpractice was confirmed by the orthopedist's medical opinion dated March 22, 2001.
On April 26, 2001, defendants' counsel's office contacted the court to determine the status of the case since no correspondence, discovery or communication on the file was exchanged since May 24, 2000 and no communication regarding arbitration or trial had been received from the court. The court advised that the matter was dismissed on January 6, 1999. In October 2001, defendants' counsel requested a copy of the dismissal order from the court. In November 2001, defendants' counsel received a copy of the order of dismissal but failed to serve it upon plaintiff despite the "NOTE" contained in the order expressly directing that the attorney receiving the order shall serve it on all interested parties within seven days. Defense counsel did not inform plaintiffs' counsel that he had been informed by the clerk that the case was dismissed nor did he copy plaintiffs' counsel with his letter to the court requesting a copy of the dismissal order. Defendants' counsel made the strategic decision not to inform plaintiffs' counsel of his oral knowledge of the dismissal, based on counsel's belief that, the longer time went by, the less likely the court would permit a vacation of the dismissal order when plaintiff became aware of the dismissal. Defense counsel contends the order was never served upon plaintiffs' counsel because it was inadvertently placed in the case file in his office since there had been no activity on the file.
According to plaintiffs, in 2001, plaintiff's treating physician indicated that subsequent medical procedures would be needed to correct plaintiff's left foot. Plaintiff's left foot worsened and in order to pay for a required operation, plaintiff needed to wait for employer-provided medical insurance to become effective. The surgery was ultimately performed in 2003.
In February 2003, plaintiffs' counsel filed a substitution of attorney as he had changed law firms. The substitution of attorney was never returned by the clerk's office indicating that the case had been dismissed.
In July 2003, plaintiffs' counsel learned for the first time that the case had been dismissed and immediately advised plaintiff that he should return to New Jersey from Alabama, where he was living with his sister as a result of depression from his estrangement from his wife, so that he could update his medical and work history. Counsel was of the view that if he filed a motion for relief from the order of dismissal pursuant to Rule 4:50-1 that the judge, after granting the motion, would schedule an early arbitration or trial date. After *1020 meeting with plaintiff in early December 2003 and arranging to update his medical and employment history, plaintiffs' counsel reviewed the clerk's file in December 2003 and learned for the first time that the case had been dismissed for failure to appear at an unnoticed arbitration.
Plaintiffs' counsel asked defense counsel to consent to reinstatement given the lack of notice to both counsel of either the scheduling of the arbitration or the order of dismissal and because of the entry of subsequent orders entered by the court indicating that the case was active. On December 30, 2003, defense counsel refused to consent. On January 6, 2004, plaintiffs filed their motion to restore the case to the trial calendar. The order denying the motion was entered March 8, 2004. This appeal followed.
The court based its decision denying plaintiffs' motion to restore the case to the trial calendar under a Rule 4:50-1(a) "mistake," stating that the motion has to be made within one year of the entry of the order. Additionally, the court noted that plaintiffs' counsel waited from the date he first learned that his clients' case had been dismissed until January 5, 2004 before filing a motion to seek relief from the judgment, suggesting that even if notice had been given by defense counsel as was required pursuant to the express terms of the order, plaintiffs' counsel would not have acted expeditiously.
Defendants argue that, although plaintiffs had a legitimate basis to vacate the improperly-entered order, they forfeited their right to do so due to their and their attorney's negligence in failing to properly monitor and pursue their case. Defendants contend the trial court's focus properly turned to the time period between the date the order was issued and the date plaintiffs moved for relief from the dismissal order. Defendants assert that the issue correctly centered on plaintiffs' attorney's one-day-short of five-year delay from the date of the dismissal order on January 6, 1999 to the date of plaintiffs' motion to restore the case to the trial calendar on January 5, 2004. Defendants argue that, pursuant to Rule 4:50-2, a party must move within one year after the order is entered if relief from an order is sought as a result of mistake or within a reasonable time if relief from an order is sought under subsection (d) of Rule 4:50-1 because the order is void.
Plaintiffs contend that subsection (d) applies because the court sua sponte entered the order of dismissal without notice to the parties. Plaintiffs contend that they were, therefore, denied procedural due process because, without notice of the dismissal, they were denied the opportunity to be heard. Defendants argue that for an order to be void within the meaning of subsection (d), there must, in fact, be a constitutional denial of procedural due process. Defendants claim that the cases construing subsection (d) involve situations where the court never acquired jurisdiction over the defendant because of inadequate service of process. Therefore, subsection (d) does not apply to the facts of this case.
Although we need not decide whether procedural due process is implicated by the facts presented here, we are satisfied that a judgment or order can be void without there being a failure of service of process and the court's consequent lack of in personam jurisdiction over a defendant being implicated. We point out that were the rule so limited, the rule likely would have specified as the ground for relief "lack of personal jurisdiction" or "defects in process." See Collyer v. McDonald, 123 N.J.L. 547, 549, 10 A.2d 284 (Sup.Ct.1940) (finding that in an action to recover for accounting services, where it was conceded that there was a demand for *1021 trial by jury on behalf of the defendants which was not waived, judgments entered in the defendants' absence and without a jury were deemed entered in violation of the defendants' fundamental rights and were void, not merely voidable); Assoulin v. Sugarman, 159 N.J.Super. 393, 397, 388 A.2d 260 (App.Div.1978) (holding that failure to comply with Rule 4:65-2, by the failure of a creditor or his attorney who had procured an execution order for sale of real estate to send debtor notice of sale at least ten days prior to the date set for sale, required voiding of the sale).
We begin with Rule 4:50, which states in applicable part:

Rule 4:50-1. Ground of Motion
On motion, with briefs, and upon such terms as are just, the court may relieve a party ... from a final judgment or order for the following reasons: (a) mistake, ...; (d) the judgment or order is void[.]
In addition, Rule 4:50-2 provides that a motion under Rule 4:50-1 shall be made within a reasonable time and for reason (a) "mistake" not more than one year after the judgment, order or proceeding was entered or taken.
Part I of the court rules contains Rules of General Application. Rule 1:1-1 provides: "Unless otherwise stated, the rules in Part I are applicable to ... the Superior Court...." Rule 1:5-1 dealing with the service and filing of papers reads, in applicable part:
In all civil actions, unless otherwise provided by rule or court order, orders, ... shall be served upon all attorneys of record in the action.... The party obtaining an order ... shall serve it as herein prescribed within 7 days after the date it was signed unless the court otherwise orders therein.
[(emphasis added).]
We are convinced that implicit in the time proscriptions of Rule 4:50-2 is that the order from which relief is sought pursuant to Rule 4:50-1 must first have been served upon the attorney of the party against whom the order was entered as required by Rule 1:5-1 or the attorney must have actual knowledge of the order.
In this case, not only would the express provision of Rule 1:5-1 in regard to service have required either the court or counsel for the defense, on receipt of the order, to have it served on plaintiffs' counsel, but the express language of the January 6, 1999 order to dismiss the complaint and suppress defenses because of the parties' failure to appear for mandatory arbitration required in capital letters: "NOTE: COUNSEL RECEIVING THIS ORDER SHALL SERVE A COPY OF SAME ON ALL INTERESTED PARTIES/ATTORNEYS WITHIN SEVEN DAYS."
The comment to Rule 1:5-1 is also instructive. It provides:
Paragraph (a) of the rule was amended effective September 1979 by the addition of the last sentence requiring the party obtaining an order or judgment to ensure its service on all other parties within seven days after its signing. This change was necessitated by the frequently occurring situation of failure of an opposing party to be timely noticed of entry of the order and his consequent prejudice in taking further steps in the litigation within a prescribed time period triggered by the entry date.
[Pressler, Current N.J. Court Rules, comment on R. 1:5-1 (2005).]
We are satisfied that the reason for the Rule's service requirement as stated in the comment applies not only to the proponent of an order or judgment but also to an attorney who is first in receipt of an order entered sua sponte by the court pursuant *1022 to Rule 4:21A-4(f) for failure to appear at arbitration.
In this case, plaintiffs' counsel never learned of the dismissal order's existence because the order was neither served by the court nor by opposing counsel. It was only when plaintiffs' counsel, albeit several years later, inquired as to a potential trial date that the clerk in July 2004 informed him that the case had been dismissed, with the clerk being uncertain as to the reason for the dismissal.
Additionally, equitable principles apply when considering a motion to vacate a dismissal for failure to appear at mandatory arbitration. In ruling on such a motion, this court has looked to the standards applicable to motions to vacate default judgments. Delaware Valley Wholesale Florist, Inc. v. Addalia, 349 N.J.Super. 228, 793 A.2d 139 (App.Div.2002). In Delaware Valley, we reversed a denial of a motion to vacate a dismissal order under the arbitration rules. We stated:
Good cause is difficult of precise delineation. Its application requires the exercise of sound discretion in light of the facts and circumstances of the particular case considered in the context of the purposes of the Court Rule being applied. Here, the judgment arises from the defendant's default in failing to appear at the arbitration. As such it is very much analogous to a default judgment[.]
[Id. at 232, 793 A.2d 139.]
We emphasized and repeated in Delaware Valley that motions to vacate default judgments "`should be viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached.' " Ibid. (quoting Davis v. DND/Fidoreo, Inc., 317 N.J.Super. 92, 99, 721 A.2d 312 (App.Div.1998), certif. denied, 158 N.J. 686, 731 A.2d 45 (1999)). The trial court is admonished to resolve "`[a]ll doubts ... in favor of the parties seeking relief.'" Davis, supra, 317 N.J.Super. at 99, 721 A.2d 312 (quoting Mancini v. EDS ex rel. New Jersey Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334, 625 A.2d 484 (1993)).
Our Supreme Court has explicitly held that a motion under Rule 4:50-1 "should be guided by equitable principles...." Housing Auth. of Town of Morristown v. Little, 135 N.J. 274, 283, 639 A.2d 286 (1994). It is inappropriate to exercise discretion without appropriate deference to the need to achieve equity and justice.
In America's Pride Constr. v. Farry, 175 N.J. 60, 811 A.2d 906 (2002), the Supreme Court determined that a party who receives notice of an arbitration hearing but does not attend it is, nonetheless, entitled to a new hearing when the arbitrator has failed to provide notice that an arbitration award has been entered. The Court rejected the lower courts' conclusions that the absence of "extraordinary circumstances" precluded vacation of the arbitration award. Id. at 61, 811 A.2d 906. The Court determined that the arbitrator's failure to provide the defendants with a copy of the arbitration award as prescribed by Rule 4:21A-5(a) was a sufficient basis to toll the filing deadlines set forth in Rule 4:21A-6(b). Id. at 63-65, 811 A.2d 906.
The Court explained that "[t]he purpose of [the] notice requirement is to apprise a party of some fact that he or she has a right to know and that the communicating party has a duty to communicate." Id. at 63-64, 811 A.2d 906. (citing Kaprow v. Board of Educ. of Berkeley Township, 131 N.J. 572, 587, 622 A.2d 237 (1993)).
When construing Rules 4:21A-5(a) and -6(b) together, the Court found that "the time periods set out in Rule 4:21A-6(b) do not begin to run until the arbitrator has filed the written award with the civil division *1023 manager and the parties." Id. at 64, 811 A.2d 906 (emphasis added).
As the Court stated:
Our interpretation of the mailing requirement under Rule 4:21A-5(a) is consonant with other Court Rules that condition a filing deadline on the receipt of notice that a judgment, order, or decision has been entered against a party. See, e.g., R. 4:49-2 (requiring service of judgment or order upon all parties before twenty day deadline under Rule is triggered); R. 2:4-1(b) (providing that appeals from final decisions or actions of state administrative agencies shall be taken within forty-five days from date of service of decision or notice of action taken).
In this appeal, it is undisputed that neither the Farrys nor their attorney received a copy of the arbitration award. The Farrys claim that if they had received notice of the arbitration award they would have rejected it immediately and requested a trial de novo. Sheehan was aware of and relied on the notice requirement under Rule 4:21A-5(a) requiring that he be notified of any award filed with the civil division manager. However, as noted, the arbitrator failed to send a copy of the award to Sheehan or the Farrys, and thus the thirty-day period to reject the award and file a demand for a trial de novo did not begin to run. See Sprowl v. Kitselman, 267 N.J.Super. 602, 610, 632 A.2d 540 (App.Div.1993) (remanding for arbitration where attorney did not receive notice of arbitration hearing). We hold that in the circumstances of this case the arbitrator's failure to send the award to the Farrys or their attorney rendered timely the late objection to the award.
[Id. 64-65, 811 A.2d 906.]
Notice is also required as a prerequisite to the court on its own motion entering a dismissal order for lack of prosecution pursuant to Rule 1:13-7. Although the order is entered without prejudice, reinstatement is permitted only on a motion for good cause. In Rivera v. Atlantic Coast Rehabilitation & Health Care Ctr., 321 N.J.Super. 340, 343, 729 A.2d 42 (App.Div.1999), the trial court prematurely, by way of Rule 1:13-7, gave notice of dismissal and entered an order of dismissal of the plaintiff's complaint for an erroneously asserted lack of prosecution. The plaintiff's motion to reinstate was denied by the court. Ibid. The plaintiff's counsel's certification conceded that his office had received a computer print-out notice advising that the complaint would be dismissed pursuant to Rule 1:13-7 unless good cause to the contrary was shown on the return date specified therein. The trial court reasoned that the failure to diary a critical date did not constitute grounds for relief under Rule 4:50-1. Id. 343-44, 729 A.2d 42. In reviewing the trial court's dismissal, we stated:
We consider the motion to reinstate not only in the context of the circumstances surrounding the dismissal, but also in the light of the evident purpose of R. 1:13-7(a). As we explained in Mason v. Nabisco Brands, Inc., supra, 233 N.J.Super. at 267, 558 A.2d 851, the rule is an administrative one "designed to clear the docket of cases that cannot, for various reasons, be prosecuted to completion" and, as we have noted, is typically used where process has not been served. But, as we also pointed out in Mason, since the dismissal is without prejudice, the right of reinstatement is implicit in the rule itself, and hence reinstatement is ordinarily routinely and freely granted when plaintiff has cured the problem that led to the dismissal even if the application is made many months later. Id. at 267-270, 558 A.2d *1024 851. Indeed, in Mason the reinstatement motion, which we held to have been properly granted, was made a year after the dismissal. We also made clear in Mason that the reinstatement always relates back to the date of the filing of the complaint. Id. at 270, 558 A.2d 851. The problem arises, of course, as it did in Mason, when the statute of limitations has run in the interim. The question, then, is whether that factor should ever militate against grant of the motion. We think the key lies in the way we deal with the analogous situation of a defendant moving for dismissal because of untimely service of process in contravention of R. 4:4-1. In that case, we have uniformly held that even a substantial delay  in some cases a year or more  will not bar the continued prosecution of the action where the failure of timely service was either for good cause or attributable only to counsel's neglect and, in addition, the defendant was not prejudiced thereby in the ability to maintain a defense.
[Id. at 346-47, 729 A.2d 42 (citations omitted).]
We further determined in Rivera that the denial of the plaintiff's motion to reinstate the complaint was a mistaken exercise of the trial court's discretion. The plaintiff was not in default of any of his litigation responsibilities when the notice of dismissal was sent in error, and the defendants did not demonstrate any prejudice to them in maintaining their defense.
Our Supreme Court made the purpose of our procedural rules clear in Ragusa v. Lau, 119 N.J. 276, 575 A.2d 8 (1990). The Court wrote:
The Rules of procedure were "promulgated for the purpose of promoting reasonable uniformity in the expeditious and even administration of justice." Such Rules "should not in themselves be the source of any extensive litigation; they should be subordinated to their true role, i.e., simply a means to the end of obtaining just and expeditious determinations between the parties on the ultimate merits."
[Id. at 283-84, 575 A.2d 8 (citations omitted).]
Moreover, Rule 1:1-2 provides for the relaxation of any rule if adherence to it would result in an injustice. As to the general purpose of the Rules, Justice Clifford, in his dissent in Stone v. Old Bridge Tp., 111 N.J. 110, 125, 543 A.2d 431 (1988), noted:
Our Rules of procedure are not simply a minuet scored for lawyers to prance through on pain of losing the dance contest should they trip. Those Rules have a purpose, one of which is to assist in the processing of the increasing number and complexity of cases[.]
[Pressler, Current N.J. Court Rules, comment 1 on R. 1:1-2 (2005).]
We need not determine whether the court should have considered plaintiffs' application for reinstatement under Rule 4:50-1(a) "mistake" or (d) a void order. The earliest date that either counsel knew of the dismissal order was April 26, 2001 when defendants' counsel contacted the court to determine the status of the case. Defense counsel did not write for a copy of the dismissal order until October 2001, and no copy was received from the clerk's office until November 2001. Defense counsel never informed plaintiffs' counsel when the order was received, despite the express direction contained in the order itself and despite the express requirement imposed upon the party obtaining an order by Rule 1:5-1. In February 2003, plaintiffs' counsel filed a substitution of attorney. The substitution of attorney was not returned by the clerk to plaintiffs' counsel. *1025 Therefore, plaintiffs' counsel reasonably believed that plaintiffs' case was still viable. Plaintiffs' counsel first had actual notice of the dismissal when he inquired of the clerk as to the status of the case in July 2003. After belatedly, in December 2003, determining the grounds for the dismissal, plaintiffs filed their motion to vacate on January 6, 2004.
We are convinced that Rule 1:5-1, as a rule of general applicability, is a mandatory requirement and, therefore, is applicable to Rule 4:50-1. We, therefore, hold that implicit in the time requirements of Rule 4:50-2 is that the time within which relief from a judgment or order pursuant to Rule 4:50-1 must be made is within a reasonable time and, for reasons (a), (b) and (c) of Rule 4:50-1, not more than one year after the order was entered or taken as required by Rule 1:5-1 and served upon the party or parties adversely affected by the order or from which the adversely affected party had actual knowledge of the order.
Here, plaintiffs' counsel was never served with the order. Counsel had actual knowledge of the order in July 2003. Plaintiffs' motion to restore the matter back to the trial calendar was served on January 6, 2004. The motion was, therefore, made within the one year and reasonable time requirements of Rule 4:50-2. Our decisions suggest a rule of liberality in interpreting motions to vacate in situations like this, especially when, as was conceded by defense counsel at oral argument, there is no actual prejudice demonstrated by the defense.
We find that the denial of plaintiffs' motion to restore their case to the trial calendar was a mistaken exercise of the court's discretion. We reverse the denial of plaintiffs' motion and remand the matter to the trial court to enter an order within forty-five days restoring plaintiffs' case to the trial calendar.
Reversed and remanded.
NOTES
[1] Judge King did not participate in oral argument. However, with the consent of counsel, he has joined in this opinion. R. 2:13-2(b).
[2] Doris V. Farrell sues per quod. Therefore, reference to "plaintiff" in this opinion will be to Harry F. Farrell solely. Reference to "plaintiffs" will be to both Harry F. and Doris V. Farrell.
[3] An amended complaint adding a count for property damage to plaintiff's motorcycle was filed on May 22, 1997.