942 A.2d 839 (2008)
399 N.J. Super. 1
SWH FUNDING CORP., A New Jersey Corporation, Plaintiff-Respondent,
v.
WALDEN PRINTING CO., INC., A New York Corporation, Walden Merchants, An unincorporated entity, Merchants Associates, Inc., A New York Corporation, Merchants Building, LLC, A New York Limited Liability Company, and Daniel Churchill, An individual, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued October 10, 2007.
Decided March 17, 2008.
*840 Michael A. Saffer argued the cause for appellants (Mandelbaum, Salsburg, Gold, Lazris & Discenza, attorneys; Mr. Saffer and Stuart Gold, West Orange, of counsel and on the brief).
Cory Mitchell Gray, Florham Park, argued the cause for respondent (Greenberg Traurig, attorneys; Mr. Gray, of counsel and on the brief).
Before Judges COBURN, FUENTES and CHAMBERS.
*841 The opinion of the court was delivered by
FUENTES, J.A.D.
Defendants Walden Printing Company, Walden Merchants, Merchants Associates, Merchants Building, and Daniel Churchill appeal from the order of the Law Division denying their motion to vacate a monetary judgment entered against them. The matter originally came before the court on plaintiff SWH Funding Corporation's ("SWH") complaint seeking damages in a breach of contract case.[1] After reviewing the record, and in light of prevailing legal standards, we affirm the order denying the motion to vacate; reverse the order fixing the amount of damages; and remand for the court to enter judgment in the amount reflected in the original arbitration award.
Defendants filed a responsive pleading denying liability and asserting failure to state a cause of action and lack of subject matter jurisdiction as affirmative defenses. The matter was thereafter scheduled for court-ordered arbitration on September 14, 2004. Defendants obtained an adjournment of the September arbitration, and the hearing was rescheduled for November 16, 2004.
On November 15, 2004, defense counsel sought to adjourn the arbitration a second time. After obtaining plaintiff's counsel's oral consent to the adjournment, defense counsel telephoned the Bergen County Arbitration Administrator to request the adjournment. The Administrator denied the adjournment request on November 15, 2004.
Arbitration proceeded on November 16, 2004. Defense counsel did not appear, nor did any individual representing defendants' business interests. After confirming that the arbitration was going forward, plaintiff's counsel appeared and presented the case on behalf of his client. The arbitrator entered an award for plaintiff and against defendants in the amount of $326,534.37.
On December 15, 2004, plaintiff filed a motion to confirm the arbitration award. Defendants opposed the motion and the parties had oral argument before the Law Division on February 4, 2005.[2] On February 15, 2005, the motion judge entered an order: (1) requiring defendants to post a surety bond in the amount of $200,000; (2) stating that failure to post the bond would result in an immediate judgment confirming the November 16 arbitration award; and (3) restraining defendants from transferring or encumbering any asset pending a further order by the court. Defendants failed to post the bond. On March 10, 2005, the Law Division entered a default judgment against defendants in the amount of $343,746.76.[3]
*842 The court denied defendants' motion for reconsideration, and ordered a plenary hearing on damages to modify the amount of the award. Pursuant to evidence presented by plaintiff at the plenary hearing, the court entered an order increasing the amount of the original arbitration award to $416,508.54.

The Underlying Factual Contentions
Before addressing the legal issues raised by defendants, we will briefly describe the salient facts. Plaintiff SWH Funding Corporation held a mortgage over property owned by Straight Course, LLC, located in Poughkeepsie, New York. Defendants Merchants Building, LLC, leased the premises from Straight Course. Defendant Merchants Associates, Inc. was the operating entity at the premises. Plaintiff alleges that defendants Walden Printing Company and Walden Merchants are successors in interest to Merchants Building and Merchants Associates. Defendant Daniel Churchill is an owner of Merchants Building and Merchants Associates.
During the summer of 2001, plaintiff sought to foreclose on Straight Course's mortgage on the premises. In light of defendants' desire to remain on the premises, the parties entered a settlement agreement on August 1, 2001, whereby plaintiff agreed not to foreclose on the premises during two forbearance periods. During these forbearance periods, defendants would pay rent and real estate taxes on the premises and could either perform due diligence to acquire the premises or enter into a long-term lease for the premises. The first forbearance period ended February 28, 2002. The second forbearance period ended May 31, 2002.
As part of the settlement agreement, defendant Daniel Churchill signed a personal guaranty. By the terms of the guaranty, Churchill assumed personal liability for any and all obligations of the corporate defendants arising under the settlement agreement.
According to plaintiff, defendants remained in possession of the premises until on or about August 2003, and failed to make the required monthly rental payments for the premises for the months of March, April, May, June, July, and August 2003. Plaintiff also alleges that defendants failed to make certain required payments in real estate taxes and assessments.

The Arbitration
In the days immediately preceding the November 16, 2004, arbitration hearing, defense counsel of record asserts that he developed a "flu-like illness." The day before the hearing, at defense counsel's request, plaintiff's counsel agreed to adjourn the arbitration. Immediately thereafter, defense counsel instructed his legal assistant to call the Bergen County Arbitration Administrator to make a formal request for the adjournment. Defense counsel and his assistant both left the office before receiving the Administrator's response to the request for adjournment.
Later that same day, the Administrator left defense counsel a voicemail message denying the adjournment request, and advising counsel that the arbitration would proceed the following day at 11:00 a.m. as scheduled. Mistakenly assuming that the arbitration had been adjourned, defense counsel did not report to work on November 16, 2004, nor did he make any arrangements to have another attorney in his firm appear on his behalf.
On November 16, 2004, the defense counsel's assistant retrieved the Administrator's voicemail message denying the request. At approximately 9:30 a.m., by telephone call, the assistant informed the Administrator that defense counsel could *843 not appear at the arbitration, but that the law firm could send another attorney in his stead. The assistant advised the Administrator, however, that given the time and distance, substitute counsel would probably not make it to the arbitration until early afternoon. According to the assistant, the Administrator told her that the arbitration would not be delayed and would proceed at 11:00 a.m. as scheduled.
The record does not indicate what steps, if any, defense counsel's firm took either to renew its request for an adjournment, or to dispatch a substitute attorney as soon as possible. According to the assistant, however, she did inform plaintiff's counsel that no one from the defense firm would be able to appear at the arbitration.
In her certification in support of the motion to vacate the default, the assistant indicated that plaintiff's counsel told her that he would not pursue an arbitration award by default, and would allow defense counsel to restore his responsive pleading by stipulation. In his certification opposing the motion, plaintiff's counsel denied having made any such representation. Indeed, counsel claimed that he told the assistant that his client was anxious to proceed with the arbitration.
The arbitration ultimately proceeded at 1:15 p.m. on November 16, 2004. Defendants made no appearance. Plaintiff submitted documentary evidence of the terms of the settlement agreement, including defendants' agreement to pay rent, the forbearance clauses, and the guaranty. This evidence established that defendants performed through February 2003, when they ceased performance but maintained occupancy of the premises.
Based on plaintiff's presentation, the Arbitrator entered an award for plaintiff and against defendants. The award reflected damages in the form of: (1) unpaid real estate taxes; (2) six months of unpaid rent; (3) unpaid telephone bills; and (4) equipment subject to third parties' security interests.
On December 15, 2004, twenty-nine days after the arbitrator entered his decision, plaintiff filed a motion to confirm the arbitration award pursuant to R. 4:21A-6(b)(3). Defendants opposed the motion, and the matter came before the Law Division on February 4, 2005.
In his certification filed in opposition to the motion to confirm the arbitration award, defense counsel raised only the following defenses: (1) "lack of jurisdiction" based on the guaranty's "Jurisdiction, Venue, Service of Process" clause; and (2) that any action against Walden Merchants was automatically stayed by that defendant's involuntary bankruptcy. Although defendants did not raise any substantive defenses as to liability, defense counsel noted a general objection to the amount of damages awarded by the arbitrator.
The Law Division entered an order dated February 15, 2005, providing as follows:
ORDERED that the Defendant shall have until 5:00 pm on February 17, 2005 to post a bond in the amount of $200,000.00 on terms satisfactory to the Court, or in the alternative, to deposit in the trust account of Mandelbaum Salzburg [sic], or such other New Jersey counsel as Defendants may engage to represent their interests in this case, the sum of $200,000.00 in cash, to serve as security for Plaintiff until further order of this Court; and it is
FURTHER ORDERED, that in the event Defendants fail to post a bond or deposit said cash collateral as security for Plaintiff's claims herein on or before 5:00 p.m. on February 17, 2005, this Court shall, on February 18, 2005 and without further hearing, enter an Order and Judgment in favor of Plaintiff and *844 against Defendants, confirming the arbitration award entered in Plaintiff's favor on November 16, 2004, and entering the amount of said arbitration award as a Judgment, jointly and severally, against Defendants, and it is
FURTHER ORDERED, that until further order of this Court, or until a judgment is entered by this Court, Defendants and each of them are hereby restrained and prohibited from selling, transferring, encumbering, or alienating any asset owned by any of them, or in which any have any interest, other than in the ordinary course of business. . . .
When defendants failed to post the $200,000 bond,[4] the court entered default judgment on March 10, 2005. The court denied defendants' motion for reconsideration and to vacate the arbitration award. By order dated August 10, 2005, the court further ordered a plenary hearing on damages to modify the amount of the award.
The plenary hearing on damages took place on November 28, 2005. At the hearing, the court heard testimony from Churchill and from Sanford Herrick, principal of plaintiff SWH. Thereafter, the court issued a supplemental opinion, making findings of fact as to damages from the record developed at the hearing. On August 2, 2006, the court entered a final judgment increasing the damages reflected in the arbitration award by $89,974.17. The final amount of the judgment was then fixed at $416,508.54.

Legal Analysis
Defendants argue that the trial court abused its discretion: (1) by not vacating the arbitration award under R. 4:21A-4(f); and (2) by not vacating the February 15, 2005, order and March 10, 2005, judgment under R. 4:50-1. In order to properly address defendants' arguments, we first need to identify and clarify the different standards for relief available under each of the Rules cited.
Relief from a default judgment entered pursuant to an arbitration award is ordinarily found in R. 4:21A-4(f). Our conclusion in this respect is buttressed by the Rule's clear language.
(f) Failure to Appear. An appearance on behalf of each party is required at the arbitration hearing. If the party claiming damages does not appear, that party's pleading shall be dismissed. If a party defending against a claim of damages does not appear, that party's pleading shall be stricken, the arbitration shall proceed and the non-appearing party shall be deemed to have waived the right to demand a trial de novo. Relief from any order entered pursuant to this rule shall be granted only on motion showing good cause and on such terms as the court may deem appropriate, including litigation expenses and counsel fees incurred for services directly related to the non-appearance.

[ (Emphasis added).]
Thus, those seeking relief from an arbitration award entered by default, must show "good cause" under R. 4:21A-4(f) for their failure to appear.
Relief under R. 4:50-1 is available when a party can meet any of the specific grounds enumerated under the Rule. The only grounds for relief potentially *845 applicable here are found in subsection (a), which affords relief from a judgment based on "mistake, inadvertence, surprise, or excusable neglect." Ibid. We emphasize, however, that "good cause" under R. 4:21A-4(f) is not synonymous with the "excusable neglect" standard in R. 4:50-1(a).
While carelessness and inadvertence on the part of an attorney is insufficient grounds for the establishment of excusable neglect, such is not necessarily the case when it comes to a determination of whether good cause exists to excuse late filings. In Martindell v. Martindell, 21 N.J. 341 [122 A.2d 352] (1956), our Supreme Court dealt with the issue of good cause in determining whether or not to excuse an attorney's inadvertent failure to file a notice of appeal within the time period required by the rules. Notwithstanding the general proposition that a litigant is bound by the mistakes of his or her attorney, the Supreme Court in Martindell held that inadvertence of counsel may justly be deemed to constitute good cause where the delay does not prejudice the adverse party and a rational application under the circumstances present favors a determination that provides justice to the litigant. Id. at 349 [122 A.2d 352]. Absent demonstrable prejudice, "it is neither necessary nor proper to visit the sins of the attorney upon his blameless client." Jansson v. Fairleigh Dickinson Univ., 198 N.J.Super. 190, 196 [486 A.2d 920] (App.Div.1985); see also Parker v. Marcus, 281 N.J.Super. 589, 594 [658 A.2d 1326] (App.Div.1995).
[Burns v. Belafsky, 326 N.J.Super. 462, 471, 741 A.2d 649 (App.Div.1999), aff'd, 166 N.J. 466, 766 A.2d 1095 (2001).]
Here, given the undisputed facts surrounding defense counsel's failure to appear at the scheduled arbitration hearing, we are satisfied that the only grounds for relief available to defendants is one rooted in the concept of "good cause" under R. 4:21A-4(f). Rule 4:50-1(a) relief is not available, because inadvertence of counsel alone is insufficient, as a matter of law, to establish "excusable neglect." Burns, supra, 326 N.J.Super. at 471, 741 A.2d 649; Quagliato v. Bodner, 115 N.J.Super. 133, 138, 278 A.2d 500 (App. Div.1971) ("By no stretch of the imagination can the attorney's tardiness on the day the motion was listed be considered excusable neglect.").
Rules 4:21A-1 to -9 govern the course of pre-trial arbitration in certain civil actions. Rule 4:21A-4(f) controls where, as here, a party fails to appear at an arbitration hearing and an award is entered against it. On its face R. 4:21A-4(f) does not set forth any mandatory time frame in which a party must seek relief. While a motion rejecting an award and demanding a trial de novo must be filed within thirty days, R. 4:21A-6(b)(1), that time frame does not apply to R. 4:21A-4(f) because the right to a trial de novo is deemed waived. Ibid. Thus, as presently written, there is no time frame for seeking relief under subsection (f).[5]
We will now address the question of "good cause." To set aside an arbitration *846 award under R. 4:21A-4(f), a party must show "good cause" for failing to appear at the arbitration. Del. Valley Wholesale Florist v. Addalia, 349 N.J.Super. 228, 232, 793 A.2d 139 (App.Div.2002). Addressing the need for specificity in applying this standard, we have held that:
Good cause is difficult of precise delineation. Its application requires the exercise of sound discretion in light of the facts and circumstances of the particular case considered in the context of the purposes of the Court Rule being applied. Here, the judgment arises from the defendant's default in failing to appear at the arbitration. As such it is very much analogous to a default judgment where the rule is that a motion to vacate `should be viewed with great liberalty, and every reasonable ground for indulgence is tolerated to the end that a just result is reached.' Davis v. DND/Fidoreo, Inc., 317 N.J.Super. 92, 99 (App.Div.1998) (quoting Marder v. Realty Contr. Co., 84 N.J.Super. 313, 319 (App.Div.), aff'd 43 N.J. 508 (1964)).
[Ibid.]
Upon a showing of "good cause," a court may vacate a default arbitration award under subsection (f) if the defaulting party makes a "good faith assertion of a meritorious defense" to the plaintiff's claims. Ibid.
In Delaware Valley, the plaintiff was a wholesale florist suing to collect from defendants for goods that plaintiff had delivered to the defendants' flower business. Id. at 230, 793 A.2d 139. The plaintiff relied upon a guaranty for defendant-flower business's obligations that bore defendant Jean Addalia's signature. Ibid. Jean Addalia denied the genuineness of her signature on the document and her husband-codefendant Thomas Addalia admitted that he had forged Jean's signature. Ibid. The matter eventually reached mandatory arbitration. Ibid. At arbitration, only the plaintiff appeared and the arbitrator entered an award against the individual defendants based on the guaranty. Ibid.
In Delaware Valley, the defendants' counsel claimed that he missed the arbitration because: (1) he had a very heavy trial calendar; and (2) based on several conversations with plaintiff's counsel, he had been "lulled" into believing that no action would be taken directly against defendant Jean Addalia at that time. Id. at 231, 793 A.2d 139. The trial court denied defendants' request to vacate the default arbitration award under R. 4:21A-4(f). Id. at 230, 793 A.2d 139.
In reversing the court's denial and remanding the matter for trial we held: (1) that the defendants' failure to appear at the arbitration was for "good cause" considering the attorney's heavy trial calendar and the evidence that counsel was "lulled" into believing that his client would not be pursued at the arbitration; and (2) that the evidence that defendant's husband had forged her signature on the guaranty was a "meritorious defense" under R. 4:21A-4(f). Id. at 232, 793 A.2d 139.
Here, by contrast, there is very little, if any evidence suggesting that defense counsel may have been "lulled" into believing that the arbitration would not go forward. A brief summary of the salient facts illustrates the point. Defense counsel admits that after obtaining the consent of his adversary for the adjournment, he left his office without confirming that his adjournment request had been favorably received by the Arbitration Administrator. Indeed, defense counsel operated at all times as if this second adjournment request would be granted automatically. This inference is supported by counsel's failure to have in place a contingency plan wherein another attorney in the firm *847 would be available to cover for him in the event his adjournment request was denied.
We recognize that counsel's assistant certified that plaintiff's counsel told her that he would not pursue an arbitration award by default, and that he would consent to restore defendants' responsive pleadings if necessary. We cannot overlook, however, that plaintiff's counsel denies this account of events, and claims that he made clear to counsel's assistant that his client was anxious to proceed with the arbitration.
Defendants argue that these factual disputes must be deemed resolved in their favor for the purposes of vacating the default judgment. See Farrell v. TCI of Northern N.J., 378 N.J.Super. 341, 350, 875 A.2d 1017 (App.Div.2005). Thus, if the assistant's certification is taken as true, it was reasonable for defendants' counsel to think that the arbitration would not proceed. What this approach fails to appreciate, however, is that plaintiff's counsel was not in control of the arbitration; the decision to go forward with the arbitration was made by the Arbitration Administrator.
Finally, we note that no one from defense counsel's firm even attempted to have the Administrator's decision denying the request for adjournment reviewed by the vicinage Civil Division Presiding Judge. Nor did counsel take any affirmative steps in the days immediately following the arbitration to discover what had transpired, and what action he needed to take to restore his client's case to the active trial calendar. The only action taken by defense counsel here occurred in response to plaintiff's motion to confirm the arbitration award. Under these circumstances, defense counsel's implicit assumption that his failure to appear at the arbitration hearing was legally inconsequential was clearly unreasonable.
Despite our unequivocal disapproval of defense counsel's conduct, we are loath to visit the sins of the lawyer upon the innocent client. Jansson, supra, 198 N.J.Super. at 196, 486 A.2d 920. We are also mindful of the well-established public policy disfavoring final dispositions based solely on procedural irregularities. Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 356, 771 A.2d 1141 (2001); Ragusa v. Lau, 119 N.J. 276, 283-84, 575 A.2d 8 (1990). We thus conclude that defense counsel's conduct, although not arising to excusable neglect, constitutes "good cause" within the meaning of R. 4:21A-4(f), warranting giving his clients the opportunity to have their defenses rise or fall on the merits of their case.
Additionally, here, the attorney's neglect did not cause substantial prejudice to plaintiff's case. Had the default been vacated, the only quantifiable measure of harm to plaintiff that we can discern from these facts is the cost incurred in litigating these issues. A remedy for such a limited harm is directly addressed by R. 4:21A-4(f). That Rule authorizes the trial court to impose "such terms as the court may deem appropriate, including litigation expenses and counsel fees incurred for services directly related to the non-appearance." R. 4:21A-4(f) (emphasis added).
However, our holding in favor of defendants on the question of "good cause" does not end the discussion. Even though defendants are able to establish "good cause," there is no evidence in the record before us that shows a meritorious defense. The following colloquy between defense counsel and the Law Division judge illustrates this point.
DEFENSE COUNSEL: The second prong, Your Honor, that we take issue with is the lack of a meritorious defense. Mr. Churchill [defendant] . . . will present evidence, if permitted, that the *848 amount claimed is not due. We don't deny that there are monies due, but certainly not almost $325,000.

THE COURT: He doesn't set forth how much is due, though, does he?
DEFENSE COUNSEL: He does not, Judge. But if  if we could just have some time and allow us to submit, the way  the way, I feel, Judge, is that these papers are not as comprehensive as they might be, but considering the quantum of damages that are going to be assessed, not just against a corporation, but against an individual guarantor, to have to come up with $325,000 to pay a judgment, I think  I would respectfully request the Court to give us some indulgence and allow us to present evidence as to what the true amount due is.
[(Emphasis added).]
Counsel thus conceded before the trial court that the only disputed issue was the amount of damages due, not liability.[6] As to damages, we agree with defendants that the trial court did not have the legal authority to increase the amount of damages awarded by the arbitrator. Under R. 4:21A-6(b)(3), the court's authority in adjudicating a motion to confirm an arbitration award is limited to reducing to judgment the amount of damages found by the arbitrator, supplemented only by prejudgment interest provided in R. 4:42-11(b).
Despite defendants' concession that they were unable to establish a meritorious defense, the trial court thoroughly reviewed defendants' arguments, and concluded that they fell far short of meeting the required threshold of proof. The court explained its reasoning thusly:
Defendant further claims meritorious defenses that include (1) the choice of forum clause in the guaranty is exclusively New York State; (2) the documents upon which liability rests for the default judgment expired prior to the conduct complained of; (3) plaintiff's contention about the scope of the holdover period is erroneous, thereby undermining the compensatory damage award; (4) an award of attorneys' fees and costs is contrary to the plain language of the guaranty; and (5) a genuine dispute exists concerning the $27,000.00 claim to be owed in real estate taxes.
Defendants stated that they were never served with the arbitration award within the time for defendants to seek a de novo hearing on the merits; hence, the defendants state that the default judgment should be vacated.
By way of background, defendant, Merchants Building, LLC, was a tenant at a warehouse located at 17 Noxon Road, Poughkeepsie, New York (the "Premises"). The operating entity at the Premises was defendant, Merchants Associates, Inc., a printing company. Plaintiff, SWH Funding Corp. ("SWH") is a lender who lent monies to Straight Course, LLC, the landlord at the Premises.
During 2001, SWH sought to foreclose on Straight Course's ownership interest in the Premises. During that time, defendant, Daniel Churchill, an officer of the defendant entities, was considering acquiring Merchants Press, the tenant at the Premises. Since it would have been uneconomic to move the business, and Merchants Press wanted to continue to occupy the Premises and not be disturbed *849 by the foreclosure action, the parties agreed to provide the defendants with time to consider whether they wanted to acquire the Premises or continue and enter into a long-term lease for the Premises.
As of August 1, 2001, the parties entered into a settlement agreement and a personal guaranty signed by Churchill.
The settlement agreement provided for two forbearance periods during which defendants could either perform due diligence to acquire the Premises or, alternatively, enter into a long term lease for the Premises. There was a default by the borrowers and the plaintiff, SWH, sought herein to collect on its loan from the defendant, Churchill, pursuant to the unconditional guaranty.
In return for the corporate defendants paying rent and real estate taxes, SWH would forbear from concluding its foreclosure action against Straight Course (an entity unaffiliated with the defendants) and permit defendants to remain in the Premises. A first forbearance period ended February 28, 2002, and a second one ended May 31, 2002. During the forbearance periods, the corporate defendants paid a $33,000.00 fee for each period plus monthly rental payments of about $30,000.00 plus escrow deposits for realty taxes.
According to the moving papers, the forbearance period ended May 31, 2002, and it is claimed that the fees were paid plus monthly rental and taxes. Defendants state that monthly payments continued to be paid after that period through March 2003 and that they did not vacate the premises. Clearly, the conduct of the parties indicated that the terms and conditions of the settlement agreement were still in effect, as the status of the parties remained the same after the expiration date of May 31, 2002.
The guaranty contains a "consent to modification" clause and a waiver of notice of any modification or extensions. The settlement agreement was extended and SWH performed under that extension by (a) not evicting defendants from the Premises and (b) accepting defendants' payment of the required monthly amount for nearly one year after the so-called "expiration" of the settlement agreement.
We agree with the trial court's conclusion, detailed above, that defendants have not demonstrated a meritorious defense. We also agree with the trial court that the legal principles addressed by the Supreme Court in America's Pride Construction v. Farry, 175 N.J. 60, 811 A.2d 906 (2002), are inapplicable to this case. In America's Pride, the Court applied a version of R. 4:21A-5 which has since been superseded by the wholesale reforms known as "Best Practices."[7] In that earlier version, the Rule required the arbitrator "within ten days after the completion of the arbitration hearing" to mail a copy of the arbitration award to each of the parties. Id. at 64, 811 A.2d 906.
Addressing that mailing requirement, the Court considered "whether the arbitrator's failure to provide [defendants] with a copy of the arbitration award as prescribed by [the Rule was] a sufficient basis to toll the filing deadlines" to request a trial de novo. Id. at 63, 811 A.2d 906. The Court answered the question in the affirmative. Despite defendants' failure to appear at the arbitration, the court held *850 that defense counsel had a right to rely upon the "mailing" requirement of the Rule. Id. at 65, 811 A.2d 906.
By contrast, in adopting the current versions of both R. 4:21A-5 and R. 4:21A-4(f), the Supreme Court specifically eliminated the requirement that the arbitrator mail a copy of the award to the parties, and denied the non-appearing party the right to file for a trial de novo. This signaled the Court's clear intention to depart from the scenario addressed in America's Pride.

Conclusion
Under R. 4:21A-4(f), a party seeking to vacate a civil arbitration award entered by default must establish both "good cause" and a "meritorious defense." Here, defense counsel's neglect in failing to appear at the arbitration, and in failing to be diligent in ascertaining the outcome of the proceeding, constituted "good cause" under R. 4:21A-4(f). Defendants have failed, however, to demonstrate a "meritorious defense." Thus the trial court correctly denied defendants relief from the consequences of their default at the arbitration hearing.
Thereafter, in the context of adjudicating plaintiff's motion to confirm the arbitration award, the trial court erroneously increased the damage award entered by the arbitrator by considering evidence not presented by plaintiff in the original arbitration hearing.
We affirm the trial court's order denying defendants' motion to vacate the arbitration award; reverse the amount of damages fixed by the trial court; and remand for the entry of judgment limited to the confirmation of the arbitration award.
Affirmed in part. Reversed in part. Remanded.
NOTES
[1] The complaint alleged: (1) breach of contract; (2) unjust enrichment; (3) wrongful use and occupancy; (4) successor liability; (5) fraudulent transfer; and (6) fraud.
[2] At oral argument on the motion, the trial judge noted that second requests for an adjournment of arbitration hearings are "always denied in Bergen County." This practice is not acceptable. We have made clear, that the Rules of Court are to be consistently and uniformly applied throughout the State. Indeed, the "Best Practices" reforms were specifically intended to eradicate such "county rules." Brun v. Cardoso, 390 N.J.Super. 409, 421, 915 A.2d 1053 (App.Div.2006). We thus expect that future requests for adjournments will be considered and decided on their merits, not based on some arbitrary local practice.
[3] The initial arbitration award was in the amount of $326,534.37. By entering judgment in the amount of $343,746.76, the trial court awarded plaintiff $17,212.39 in prejudgment interest as of December 31, 2004, pursuant to R. 4:42-11(b).
[4] Defendants have not explained their failure to post the bond ordered by the court; nor do they argue that the trial court abused its discretion under R. 4:21A-4(f) by conditioning their ability to proceed upon the posting of such a bond. We are nevertheless compelled to note that a non-binding arbitration award, entered by default, should not be treated as the functional equivalent of a final judgment. Thus, requiring the posting of such a bond in this context seems to be facially unwarranted.
[5] We deem this to be a regulatory oversight that should be addressed by the Civil Practice Committee. We also note that R. 4:21A-5 requires the arbitrator to file the written award with the civil division manager. Thereafter, "the court shall provide a copy thereof to each of the parties." R. 4:21A-5. The Rule is silent, however, on how such notice is served upon an absent party when the arbitration award is entered by default. We thus further recommend that the Civil Practice Committee consider language specifically addressing this scenario, by specifying who bears responsibility for serving the arbitrator's decision upon the party in default.
[6] In their brief, defendants also argue that New Jersey is an improper venue based on the guaranty's forum selection clause. The clause in question clearly gives plaintiff the discretion to bring suit in New Jersey. Thus, defendants' improper venue argument is not worthy of further discussion. R. 2:11-3(e)(1)(E).
[7] The actual package of amendments known as "Best Practices" was adopted on July 5, 2000, and became effective on September 5, 2000. Pressler, Current N.J. Court Rules, note to R. 4:21A-5 (2008).