**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2733-19

JEFFREY HEMINGWAY,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and ONE POINT HRO LLC,

     Respondents.

_____

Submitted March 17, 2021 – Decided May 5, 2021

Before Judges Vernoia and Enright.

On appeal from the Board of Review, Department of Labor, Docket Nos. 190,271 and 190,267.

Jeffrey Hemingway, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent Board of Review (Melissa H. Raksa, Assistant Attorney General, of counsel; Sean P. Havern, Deputy Attorney General, on the brief).

Respondent One Point HRO LLC has not filed a brief.

PER CURIAM

Jeffrey Hemingway appeals from the January 31, and March 5, 2020 final agency decisions issued by respondent Board of Review, affirming dismissals entered by the Appeal Tribunal.[1] We reverse the Board's final decisions and remand for the Appeals Tribunal to reopen the administrative appeals and afford Hemingway a hearing on the merits of those appeals.

Hemingway applied for unemployment benefits in April 2019. At the end of July, he found a new job. To ensure he did not apply for benefits to which he was not entitled, he reported he was not available for work the week ending July 27, 2019, because his new job started on July 22.

The Deputy Director of the Division of Unemployment and Disability Insurance determined Hemingway was ineligible for benefits from July 21 to July 27, 2019, due to Hemingway's employment. Also, to Hemingway's dismay,

---

[1] Hemingway does not list the March 5, 2020 order in his notice of appeal but addresses this order in his brief. Ordinarily, we do not consider judgments or orders not identified in the notice of appeal. See Rule 2:5-1(e)(3)(i) (stating that a notice of appeal "shall designate the judgment, decision, action or rule, or part thereof appealed from"); see also Fusco v. Bd. of Educ., 349 N.J. Super. 455, 461-62 (App. Div. 2002) (stating appellate review pertains only to judgments or orders specified in the notice of appeal). The March 5 order implicates the same substantive issues leading to the entry of the January 31, 2020 order. Also, Hemingway's repeated efforts to obtain review of both his disqualification of benefits and the agency's demand for a refund of benefits already paid convinces us to address both issues here.

A-2733-19

and for reasons still unclear, the Deputy Director requested a refund of all benefits received totaling $10,440, concluding Hemingway "improperly receiv[ed] benefits . . . through July 20, 2019."

Hemingway appealed from the Deputy Director's determination. Nine days later, the Appeal Tribunal sent him a hearing notice, bearing docket number 190271, scheduling a telephonic hearing for September 17, 2019 at 11:30 a.m. The hearing notice instructed Hemingway to register for the hearing no later than 3:00 p.m. on the business day prior to the hearing. The notice also provided in bold print, "the Office of Benefit Appeals WILL NOT INITIATE A CALL TO YOU UNLESS YOU HAVE REGISTERED FOR THE HEARING AS INSTRUCTED ABOVE." The next paragraph of this notice stated in regular print, "[y]our appeal may be dismissed or you may be denied participation in the hearing if you fail, without good cause, to follow the instructions contained in this notice."

Although Hemingway simultaneously appealed from the refund demand when he appealed from the denial of unemployment benefits, the Appeal Tribunal assigned his appeals different docket numbers. Also, it issued a second hearing notice, under docket number 190267 to address the refund appeal and

scheduled the hearing regarding the refund to occur a half hour before the hearing on the denial of benefits.

Hemingway did not register for either hearing. Based on his correspondence to the Appeal Tribunal, as well as that of his attorney, it appears Hemingway believed he only needed to call the phone number referenced in the hearing notices to pursue his appeals.

On the day of the scheduled hearings, Hemingway's employer unexpectedly called him into a meeting to present a "project to management." The meeting lasted past 1:00 p.m., and when it ended, Hemingway immediately called the Appeal Tribunal to explain why he failed to telephonically appear. The person who answered his call informed him that because he failed to register, no hearing had been scheduled, but he could request another hearing. Additionally, the Appeal Tribunal dismissed both of Hemingway's appeals, noting "the appellant failed to register as instructed for the telephone hearing nor request an adjournment." The Appeal Tribunal relied on N.J.A.C. 1:12-14.4(a) when it issued its decisions.

In separate letters dated September 22 and 24, 2019, Hemingway requested additional hearings under both docket numbers. He apologized for not appearing for the "missed scheduled hearing," explaining he was called into

4

a senior management meeting without warning, "which went into a lengthy discussion." He "promise[d] to be on the next call even if [required to] take off to meet with the Appeal Tribunal."

In separate decisions (one for each docketed appeal), the Appeal Tribunal denied Hemingway's requests to reschedule his hearings because "he did not provide an explanation for his failure" to register, citing N.J.A.C. 1:12-14.4(b), the regulation governing the rescheduling of a hearing following dismissal for non-appearance. Each letter was signed by the same appeals examiner.

On October 28, 2019, Hemingway wrote a letter to the Board, referencing both docket numbers, and requested another hearing. Significantly, he stated, "this letter is the follow-up to both the Board of Review and the Appeal Tribunal regarding the two docket #s listed in the heading." Hemingway explained he initially did not realize he had to register for a hearing on September 17, 2019. He also clarified the nature of his appeal, stating:

> I was available and looking for work starting on April 7th, 2019, through July 13th, 2019. I received a deposit in my checking account for every week I mentioned that I was looking for work for that week. When I was offered a position with the start date of the 22nd of July 2019, I went online to the unemployment site on the 27th of July and checked the box that I was not looking for work for the week of July 20th, 2019. There was no field to justify why I made that selection, so I assumed that since I was available and looking for work the

A-2733-19

weeks prior it was understood that['s] why I selected the opposite. I selected that option because I was about to start my new position on the 20th of July, 2019.

This is when the letters and stress started.

I received a letter with a mailing date of 8/15/19 and a statement sometime there[]after that I had a debt of [$]10,44[0].

I called into the unemployment office and was told to appeal that decision. I thought that once I appealed the allegation, I received a letter to meet [the appeals examiner]. I thought that letter was informing me of the logistics (who, what, when, and how). Not knowing that I had to register at a different location. I have been employed well over 40 years and have only collected unemployment twice in my career, so I am not familiar with how the process works.

On 9/17/2019[,] I was called into a meeting at my job to do a presentation on a project I was working on and it went way over the allotted time and I missed calling or receiving a call from [the appeals examiner] I thought so I placed a call to the number that was on the appeal and was told to re-apply for another hearing date. I received so many letters between 9/17/2019 and the new date from my request, 10/1/19, for the second appeal that I became very confused and stressed.

A-2733-19

In a decision disposing of both appeals, the Board affirmed, finding Hemingway failed to show good cause for his non-participation in the hearings, in accord with N.J.A.C. 12:20-3.1(i).[2]

Hemingway subsequently retained counsel in his quest to secure a hearing before the Appeal Tribunal. Counsel sent a letter to the Appeal Tribunal, referencing docket number 190271, and advised that his client failed to register for the hearing because he

> was under the impression that he did register for the hearing when he registered online for the appeal. Mr. Hemingway misunderstood the instructions on his notice of phone hearing . . . . It was an honest mistake as he thought he was already registered as a result of his online application to appeal.

The Board denied counsel's request to schedule another hearing. Hemingway subsequently re-submitted his counsel's letter to the Appeal Tribunal in a renewed bid for a hearing, which the Board denied.

Hemingway filed a notice of appeal and requested a stay to suspend the repayment of his unemployment benefits pending appeal, hoping he could halt the "confiscation" of such benefits through the "New Jersey Division of Revenue

---

[2] N.J.A.C. 12:20-3.1(i) pertains to late-filed appeals. The Board does not contend Hemingway's appeal was untimely.

Set-Off Program" and the subsequent interception of his income tax refund. We denied his request for a stay.

On appeal, the Board insists Hemingway has appealed the wrong order – the one denying him benefits for the one week he admits he was not entitled to benefits, and not the order demanding a refund. As we see it, Hemingway has been caught in a bureaucratic snafu approaching the Kafkaesque, despite the fact he: (1) explained his confusion over the requirement to register for the hearing; (2) immediately addressed the problem; (3) and continuously sought a hearing to clarify why he ceased being "available for work" in July 2019 and to determine why he was directed to refund benefits, under N.J.S.A. 43:21-16(d), for the period of time he was unemployed and allegedly available for work. Moreover, while still pro se, Hemingway made clear in his October 28, 2019 letter to the Board that he wanted to be heard on both docketed matters, and the Board considered both matters when it affirmed the Appeal Tribunal's decisions on November 21, 2019. Accordingly, we are satisfied it is appropriate to address Hemingway's requests for hearings under both docketed matters.

Our scope of review is limited, and we are bound to affirm the Board's determination if reasonably based on proofs. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). "[T]he test is not whether an appellate court would come to

8

A-2733-19

the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Ibid. (quoting Charatan v. Bd. of Review, 200 N.J. Super. 74, 79 (App. Div. 1985)). On the other hand, "[c]ourts are not to act simply as a rubber-stamp of an agency's decision" that is not supported by substantial record evidence. Philadelphia Newspapers, Inc. v. Bd. of Review, 397 N.J. Super. 309, 318 (App. Div. 2007). While some deference is owed to the agency's interpretation of statutes and regulations it is responsible for implementing, we are "in no way bound by" the agency's interpretation of the law or legal conclusions. Utley v. Bd. of Review, 194 N.J. 534, 551 (2008) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

Dismissal of a case based on the nonappearance of a claimant is expressly authorized by N.J.A.C. 1:12-14.4(a), but where an appeal is dismissed due to nonappearance pursuant to N.J.A.C. 1:12-14.4(a), a claimant is entitled to have the dismissal "set aside" by the chief appeals examiner if he or she satisfies the requirements of N.J.A.C. 1:12-14.4(b).[3] Essentially, N.J.A.C. 1:12-14.4(b)

---

[3] N.J.A.C. 1:12-14.4(b) provides:

> If an appeal tribunal issued an order of dismissal for nonappearance of the appellant, the chief appeals

A-2733-19

provides relief for a claimant whose appeal is dismissed due to nonappearance and failure to demonstrate good cause for adjournment under N.J.A.C. 1:12-14.4(a). Relief under the regulation is mandatory where a claimant makes the required showing of good cause within six months of a dismissal; notably, no such "good cause" requirement exists if an applicant seeks to reopen an appeal after the six-month period following a dismissal.

The Rule does not expressly define what constitutes "good cause" to set aside the order of dismissal under N.J.A.C. 1:12-14.4(b). Still, in an analogous context, we have observed that "'[g]ood cause' is an amorphous term, that is, it 'is difficult of precise delineation. Its application requires the exercise of sound discretion in light of the facts and circumstances of the particular case considered in the context of the purposes of the Court Rule being applied.'" Ghandi v. Cespedes, 390 N.J. Super. 193, 196 (App. Div.

---

examiner shall, upon application made by such appellant, within six months after the making of such order of dismissal, and for good cause shown, set aside the order of dismissal and shall reschedule such appeal for hearing in the usual manner. An application to reopen an appeal made more than six months after the making of such order of dismissal may be granted at the discretion of the chief appeals examiner. (Emphasis added).

2007) (quoting <u>Delaware Valley Wholesale Florist, Inc. v. Addalia</u>, 349 N.J. Super. 228, 232 (App. Div. 2002)) (interpreting <u>Rule</u> 1:13-7(a), which permits reinstatement of a civil complaint dismissed for lack of prosecution upon a showing of "good cause"). Also, setting aside a dismissal seems particularly appropriate where, as is the case here, respondent does not argue it would suffer prejudice if the action were reinstated. <u>Rivera v. Atl. Coast Rehab. Center</u>, 321 N.J. Super. 340, 346-47 (App. Div. 1999).

Although not characterized as such, it is evident Hemingway's multiple requests for a rescheduled hearing under both docket numbers constituted applications to set aside the orders of dismissal pursuant to N.J.A.C. 1:12-14.4(b). He was well within the six-month timeframe under the regulation to seek this relief, but an appeals examiner nonetheless denied his request, without identifying himself as the chief appeals examiner or confirming he was acting on behalf of the chief appeals examiner pursuant to a delegation of authority. As noted, the Board affirmed the denials on November 21, 2019, referencing both docket numbers.

"We interpret a regulation in the same manner that we would interpret a statute," <u>U.S. Bank, N.A. v. Hough</u>, 210 N.J. 187, 199 (2012), and will not adopt an interpretation "so as to produce an unreasonable or absurd result," <u>In re</u>

Application of Boardwalk Regency Corp. for Casino License, 180 N.J. Super. 324, 345 (App. Div. 1981). The need for interpretation is no less important here, where a claimant has been denied a hearing on the merits of his administrative appeals.

The Unemployment Compensation Act (Act), N.J.S.A. 43:21-1 to -24.30, is designed primarily to lessen the impact of unemployment that befalls workers through no fault of their own. Brady, 152 N.J. at 212. "The public policy behind the Act is to afford protection against the hazards of economic insecurity due to involuntary unemployment." Yardville Supply Co. v. Bd. of Review, 114 N.J. 371, 374 (1989). Unemployment compensation law is "remedial in nature . . . [and] must be liberally construed in light of [its] beneficent purposes." Teichler v. Curtiss-Wright Corp., 24 N.J. 585, 592 (1957); see also Meaney v. Bd. of Review, 151 N.J. Super. 295, 298 (App. Div. 1977). Additionally, under N.J.S.A. 43:21-16(d)(1), when a person has received unemployment benefits, but is subsequently deemed disqualified from receiving such benefits and becomes liable to repay them, "[s]uch person shall be promptly notified of the determination and the reasons therefor." Here, the record is devoid of an explanation for why Hemingway was directed to refund $10,440 in

unemployment benefits for a period in which he claims he was unemployed and available for work.

Mindful that Hemingway promptly and repeatedly requested a hearing to address his concerns, and that a "citizen facing a loss at the hands of the State must be given a real chance to present his or her side of the case before a government decision becomes final," Rivera v. Bd. of Review, 127 N.J. 578, 583 (1992), we are satisfied principles of fairness demand further review of this matter. Therefore, we reverse the Board's January 31 and March 5, 2020 final decisions and remand the matter for the Appeals Tribunal to reopen Hemingway's appeals and reschedule his hearing.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION